# Wood et al. v. First American Bank, Wilmore, Ky., et al.

May 2, 1939.

ROBERT J. DENNY and HUNT, BUSH & LISLE for appellants.
GLENN RICKETTS and JOHN S. DEERING for appellees

OPINION OF THE COURT BY JUDGE STANLEY—Reversing.

The appeal is from a judgment ''that the estate of George E. Wood is indebted to the plaintiffs for double liability of the amount of stock held by the estate in the First American Bank of Wilmore, Kentucky,'' and that the plaintiffs recover of the estate $1,200 with interest. The plaintiffs, now appellees, are the First American Bank, by the Director of the Division of Banking of the Commonwealth and the Special Deputy Banking Commissioner in charge of its liquidation. The defendants, now appellants, are the four heirs and devisees of George E. Wood.

When George E. Wood died in July, 1928, he owned twelve shares of the capital stock of the First National Bank of Wilmore. He bequeathed all his estate to his wife, Maggie S. Wood, for life with remainder to his four children. The widow qualified as executrix of his will. She never made a settlement. In 1930, the National Bank was in bad financial condition, probably insolvent. The testimony is that its directors decided to convert the institution into a state bank. On July 28, 1930, the Banking Department of the State approved articles of incorporation of the First American Bank of Wilmore. Among the incorporators listed in the body of articles is the name of George E. Wood as the owner of twelve shares, although he had been dead two years. Among the signers of the instrument was ''Maggie S. Wood'' as the owner of twelve shares. Two proxies for another to vote this stock in the state bank were signed by Mrs. Wood without any designation as executrix. One was given just before the articles of incorporation were approved and the other two years later. The register shows a certificate of stock was issued to Mrs. Maggie S. Wood as being transferred as of October 13, 1930, from the original certificate issued to her deceased husband by the First National Bank. In March, 1933, the bank was placed in the hands of the Banking Department of the Commonwealth for liquidation as an insolvent institution. In November, 1933, the court imposed and authorized the collection of a one hundred per cent assessment of the stockholders under the provisions of Section 547, of the Statutes, then current, but amended in 1936 to relieve stockholders in banks of such double liability. In January, 1934, Mrs. Wood died.

The appellants maintain that the bank records show the ownership of the stock was by Mrs. Wood personally and that she did not acquire or hold the same either as executrix or as life tenant. For purposes of the decision, we may look over the failure to designate Mrs. Wood as executrix and regard as established the allegations of the petition that the stock was that of her husband's estate, carried over into the state bank by way of substitution so as to bind his estate for the payment of the assessment.

Section 589, Kentucky Statutes, is quoted for convenience:

"Whenever any national bank is authorized to dissolve, it shall be lawful for a majority of the di-

rectors of such bank, upon authority in writing of the owners of two-thirds of its capital stock, to execute articles of incorporation as provided herein, which articles shall also set forth the authority derived from the stockholders of such dissolved bank, and upon filing the same in the manner provided when a bank is organized, the same shall become a bank under the laws of this state; and thereupon all assets, real and personal, of such bank shall be vested in and become the property of such state bank, subject to all liabilities existing against the bank at the time of its reorganization.''

The statute has not hitherto been before this court for construction.

There is a similar statute of the United States, a part of the National Banking Act, which provides that under certain conditions any state bank, by vote of the holders of a majority of the capital stock, may be converted into a national banking association, and that ''the shares of any such bank may continue to be for the same amount each as they were before the conversion.'' As part of the procedure the statute provides that the articles of association and organization certificate may be executed by a majority of the directors of the bank and prescribes that, ''the certificate shall declare that the owners of 51 per centum of the capital stock have authorized the directors to make such certificate and to change or convert the bank or banking institution into a national association.'' 12 U. S. Code, Section 35, 12 U. S. C. A., Section 35. The construction of this statute is thus given in 2 Am. Jur. Banks, Section 835:

''The reorganization of a state bank as a national bank does not destroy its identity or corporate existence. The transition does not disturb the relation of either stockholders or officers of the bank, nor does it enlarge or diminish the assets of the institution. These all remain the same under the national as they were under the state organization. The change is a transition, and not a new creation. By such conversion every holder of capital stock of the state bank becomes a shareholder of the capital stock in the national bank to the amount of his shares, and, as such, is subject to liabilities imposed by the act of such shareholders.''

If the First American Bank of Wilmore had been

organized in accordance with the provisions of Section 589, of the Statutes, it would have to be said that there was in substance though not in form a continuation of the same body under a changed jurisdiction, with the resulting effect of liability of the stockholders for assessment because of insolvency and necessity of satisfying the creditors of the bank. 1 Zollman, Banks and Banking, Sections 321, 330; Cf. Alt v. Liberty National Bank & Trust Company, 260 Ky. 87, 93 S. W. (2d) 866. Perhaps there was a purpose to convert the National Bank into a state bank through that prescribed procedure, but the record does not show any compliance with that statute. The National Bank's records contain no reference to any resolution either of liquidation or conversion, except that at a meeting of the directors held May 29, 1930, notice was ordered to be mailed "to all stockholders who have not already signed the resolution for transferring to a state bank, i. e., getting a charter for a state bank." There is nothing to show that there was any authority in writing of the owners of two-thirds of the capital stock for the directors to execute articles of incorporation as prescribed by Section 589. The document which was executed and approved by the Banking Department does not, as that statute further provides, "set forth the authority derived from the stockholders of such dissolved bank." The articles clearly and explicitly set up an original and new banking institution in accordance with the provisions of Section 578 et seq. of the statutes. Nor is there anything in the minutes or records of the new state bank disclosing it to be a converted institution except that in the minutes of July 25, 1930 (three days before the articles of incorporation were approved and it was authorized to do business), it is recorded "the business of the old First National Bank was discussed and retired except some old notes that are out for collection." That there was an absorption of the National Bank for the state bank, which continued in the same place of business with the same officers, is established. But the state bank was a new and original creation and not a transmutation as contemplated and defined by Section 589, of the Statutes. It is to be assumed that there was a purpose in the legislature in enacting this statute. Several purposes may be surmised, but, irrespective of them, the fact is that the conditions and terms of the statute were not observed while the procedure for an original organization was followed. Where a statute prescribes the

only method by which an insolvent state bank may be reorganized, its requirements must be observed. First State Bank v. Lee, 65 Okl. 280, 166 P. 186, L. R. A. 1918B, 609; 3 Michie, Banks and Banking, Section 5

The conclusion being the bank was an independent, original corporation, it cannot be held, as has been held in relation to transitions from state to national banks as above stated, that every stockholder of the preceding bank became a stockholder of the successor. The case must be decided upon the predicate that there was a voluntary liquidation of the national bank and a taking over of the assets by a new state institution through an agreement and not by virtue of the statute or the implications which may be read therein. Where there is a new banking corporation though it takes over the assets of other banks, as regards their statutory liability, stockholders of one old bank are not stockholders of the new bank in the absence of their consent, express or implied, although they are carried on the books of the new bank. 3 Michie, Banks & Banking, Section 12; Erhard v. Boone State Bank, 8 Cir., 65 F. (2d) 48: Cf. Fitzpatrick's Guardian v. First National Bank, 256 Ky. 93, 75 S. W. (2d) 754. The question then becomes one of authority in the executrix to surrender the stock of her testator in the First National Bank for stock in the First American Bank so as to impose liability upon the estate for the double assessment of its stockholders.

The case of Golden v. Cervenka, 278 Ill. 409, 116 N. E. 273, is pertinent. When Isaac L. Ellwood died he owned fifty shares of stock in the LaSalle Street National Bank of Chicago. Thereafter the LaSalle Street Trust & Savings Bank was organized as a state institution for the purpose of taking over the business of the National Bank, and all its assets were transferred to it. As we gather from the lengthy opinion, which disposes of many questions, there was no Illinois statute similar to Section 589 of the Kentucky Statutes. An agreement was entered into between the stockholders of the national bank to exchange their stock for stock in the state bank in the same proportion and that the directors, officers and organization of the new institution should be the same as the old. The court held that this agreement did not authorize the granting of a certificate by the state officers authorizing the new bank to commence business without a compliance with the statutory requirements for the organization of banking institutions.

Ellwood's executors, as trustees, had testamentary power to sell and dispose of the property of the estate and to manage and control the same as they might deem for its best interests until final distribution to be made within ten years. The executors signed an agreement to accept fifty shares of stock in the state institution in substitution of the stock in the national bank. The Illinois statute, like the Kentucky statute (Section 4706), confined investments by fiduciaries to specific classes of securities, and as the Ellwood will contained no power to invest in bank stock nor give any other direction as to the kinds of investments which might be made, it was held that the executors were limited to the classes specified by the statute. There, as here, the state bank became insolvent. In a suit to recover the statutory superadded liability of its stockholders from the Ellwood esstate, the court held that the executors had been without power to exchange the stock, hence did not impose such liability upon the estate.

See also Penn v. Fogler, 182 Ill. 76, 55 N. E. 192 and Annotation, 59 Am. St. Rep. 553, of cases relating to the liability of banks reorganized under a different government or jurisdiction for the debts of the preceding institution. Cf. Board of Commissioners v. First National Bank, 194 N. C. 475, 140 S. E. 208.

Sections 4706 and 4707, Kentucky Statutes, prescribe the character of securities in which funds of a fiduciary might be invested. In 1930 Section 4706 specifically provided that such funds should not be invested in securities of any corporation which had not been in operation more than ten years. A trustee could not invest funds in bank stock unless the bank had been in operation more than ten years. Robertson v. Robertson's Trustee, 130 Ky. 293, 113 S. W. 138, 132 Am. St. Rep. 368.

Therefore, the conclusion is inevitable that Mrs. Wood as executrix had no authority or power to exchange the testator's stock in the national bank for stock in the state institution and thereby impose the statutory liability for double assessment of the par value of that stock upon the estate.

While it is not clear, we construe the petition herein as being but a suit against the estate by reason of Mrs. Wood's act in her capacity as executrix and so determine the case. Therefore, it is not necessary to consider

what, if any, liability there may have been by her personally or her individual estate.

The judgment is reversed.