No. 14,965.

BARSCH v. HAMMOND.

(135 P. [2d] 519)

Decided March 15, 1943.

442

Messrs. McHENDRIE, BURRIS & POINTER, for plaintiff in error.

Mr. H. T. McGARRY, Mr. V. G. SEAVY, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is an automobile accident case in which plaintiff in error seeks to reverse a judgment for $2,500 and costs entered in accordance with the verdict of a jury in favor of Louise B. Hammond, to whom we hereinafter refer as Mrs. Hammond, defendant in error, whose husband died as a result of injuries sustained in the accident. A default judgment for $5,000 had been entered prior to this one, but due to a deficiency in the service of process, counsel for Mrs. Hammond, confessed error; the default judgment was set aside and a trial had on the merits. Plaintiff in error, Barsch, was the owner of the truck which was being driven by his brother, his admitted agent, at the time of the accident.

The accident occurred about 3:45 a.m., October 18, 1937, near a filling station in the little town of Pinon about thirty miles south of Colorado Springs on U. S. Highway 85, where a family by the name of Holcomb operates a restaurant and service station. The place served as a "truck stop" for a number of truck drivers using the highway. The highway—an eighteen foot wide cement road—at this point is fairly level for quite a distance in each direction, although there is a curve to the left in the road towards Colorado Springs about fifteen hundred feet from the scene of the accident. There was a driveway leading off the highway to the Holcomb buildings on the west side of the road. The morning of the accident Hammond was driving south alone in a 1937 Ford sedan on this road from Colorado Springs to Pueblo, and Barsch was driving north in a thirty-two foot long tractor-trailer. Upon reaching the driveway to the filling station, Barsch turned his truck to the left without making a left hand signal, and the Hammond car crashed into it with such force that the front of his car was smashed in pinning him, Hammond, under the steering wheel, and causing injuries from which he died the next day. Since there were no eyewitnesses to the accident, other than Barsch, it is difficult to ascertain from the testimony the relative speed of each vehicle as

it approached the point of collision, although Barsch admits seeing the Hammond car when it came around the curve on the north, about a quarter of a mile north of Pinon. Barsch apparently thought he had enough time to make the turn into the driveway ahead of the Hammond car.

The night was clear and the Holcomb buildings were well lighted. That Hammond saw the truck making the turn is a fair surmise because there were tire skid marks for about thirty feet ahead of the point of impact, indicating that Hammond tried to stop his car, although Barsch testified that he did not hear any screeching of brakes; that when he saw that a crash was imminent, he stopped his truck just off the pavement at an angle to it, facing into the Holcomb driveway. From the tire marks of Hammond's car, it was apparent that he had driven off the pavement on his right in an attempt to avoid a collision. Following the accident, most of the Hammond car was on the pavement, cross-wise thereof, with the front part of it against the right front part of the tractor.

Hammond was taken to a hospital in Pueblo. His wife and children arrived there about 7:45 a.m. Mrs. Hammond testified: "As we came up to him, the children and I, he put his arm around the children, kissed each one of us, and said, 'Mother dear, I won't ever be home with you and the babies again; I am done for * * * He said he saw this other car coming, and it made no indication of turning, and he supposed it was going to continue on its course north, or in the direction in which it was going. * * * But all of a sudden, quite suddenly, this man turned directly in front of him, which would have been to his left, got directly in front of him, giving no intimation he was turning or going into this place * * *. When he struck the car that he was yet on the highway, partly in the highway when he struck it."

(1) This statement was admitted in evidence as a

dying declaration, and its admission as such is the principal ground for reversal in this case. Other matters urged are: (2) That Hammond was intoxicated. (3) That the court should have directed a verdict for defendant. (4) That the court erred in giving instruction No. 4. (5) That there was a variance between pleading and proof. (6) That the court erred in denying motion for a new trial.

 1. Counsel for plaintiff in error objected to the introduction of the above testimony upon the ground that it was hearsay, but when opposing counsel called attention to chapter 145, session laws 1937, which permits such declarations to be introduced, objection was that no proper foundation had been laid, which objection was cured by a proper foundation being laid. This statute reads, in part: "To render the declarations of the deceased competent evidence, it must be satisfactorily proved: 1. That at the time of the making of such declaration he was conscious of approaching death and believed there was no hope of recovery; 2. that such declaration was voluntarily made, and not through the persuasion of any person; 3. that such declaration was not made in answer to interrogatories calculated to lead the deceased to make any particular statement; 4. that he was of sound mind at the time of making the declaration." All of these elements were positively established by Mrs. Hammond on both direct and cross-examination, and several defense witnesses corroborated Hammond's rationality.

 2. Defense counsel also sought to show that Hammond was intoxicated, but the only evidence in the record tending to show intoxication is some conflicting testimony as to the detection of the odor of liquor on his breath. There is not a suggestion in the record that Hammond was intoxicated at the time of the accident and at least two defense witnesses testified that he was rational while pinned in the car and immediately following his release.

■ 3. The court committed no error either in denying the motions of counsel for defense asking for a directed verdict at the close of plaintiff's testimony, or when all the testimony was in, because all the evidence indicates that Barsch gave no signal when he made a left turn into the driveway. This is in violation of sections 205, 206, 207, chapter 16, '35 C.S.A., and defense counsel concede the law to be as stated in *Holland v. Strader*, 216 N.C. 436, 5 S.E. (2d) 311, 312, as follows: "According to the uniform decisions of this court, the violation of a statute imposing a rule of conduct in the operation of a motor vehicle and enacted in the interest of safety has been held to constitute negligence per se, but before the person claiming damages for injury sustained can be permitted to recover he must show a causal connection between the injury received and the disregard of the statutory mandate. * * * The violation of a statute imposing a duty on the driver of a motor vehicle for the protection of persons and property from injury necessarily connotes a breach of duty constituting negligence, but it does not import liability unless the violation of the statute be shown by proper proof to have been the proximate cause of the injury." For a recent statement of reiteration of this principle in this state, see *Hertz Driv-ur-Self System v. Hendrickson*, 109 Colo. 1, 4, 121 P. (2d) 483, citing 42 C.J., 887 and 45 C.J. 732.

Counsel for plaintiff in error intimate that our statute, section 205, chapter 16, '35 C.S.A., supra, is applicable only "in the event any other vehicle may be affected by such movement." Barsch admits he saw the Hammond car coming south immediately upon its rounding the curve, so the "other vehicle" was clearly within the meaning of the statute. The question of proximate cause here was for the jury.

■ 4. The court was justified on the record in giving instruction No. 4, which reads: "You are further instructed that while it is the duty of a motorist to observe

for the protection of others that degree of care, precaution and vigilance which the circumstances justly demand, that in cases of sudden emergency, the motorist is not required to use the same degree of judgment in controlling his actions as would be required if an emergency did not exist." One cannot escape the conclusion that Hammond was confronted with an emergency when the driver of this thirty-two foot tractor-trailer made a left turn in front of him without signaling.

5. As to the variance in the pleading and proof, there appears to be a slight variance, but it was not fatal for several reasons: (a) There was no objection to the admission of evidence indicating the variance at the time it was offered. (b) If there had been, plaintiff had the right to amend. (c) While there was variance from the proof in the pleading in that the truck did not run "upon" and "over" the Hammond car, as alleged in the complaint, the evidence is that since the truck was still moving it did run against it, which fact is sufficient to sustain the general allegation of negligence pleaded. *Tew v. Powar,* 37 Colo. 292, 86 Pac. 342; *Hiner v. Cassidy,* 92 Colo. 78, 18 P. (2d) 309; *Otis & Co. v. Teal,* 74 Colo. 336, 221 Pac. 884.

6. Granting or refusing a motion for new trial is largely within the discretion of the trial court and we do not think it was abused in this case. Motion for new trial was based largely upon so-called "newly discovered evidence" consisting of the alleged willingness of the nurse assigned to the case to testify that Mrs. Hammond did not arrive in the hospital until 9:00 a.m., and that, therefore, Hammond could not have made the alleged dying declaration at 7:45 a.m. There are several answers to this argument which are based on inferences from the record. (a) Assuming that Mrs. Hammond did not arrive until 9:00 o'clock, the record discloses that she and the children were alone at various times with her husband prior to 11:00 o'clock when he could have made his statement. (b) Much of the matter related in

the affidavit is contradicted by the physician in attendance and by other witnesses. (c) The alleged surprise of the offering of the dying declaration was due, not so much to its content, as to the apparent fact that counsel overlooked the statute permitting it. (d) Every material part of the dying declaration was at least corroborated, if not substantiated, by defense testimony, and the physical and relative positions of the vehicles themselves immediately following the accident support it. Even now, counsel say in their brief: "However, we also then felt [referring to the time of admission of the dying declaration], as we do now, equally confident that the testimony adduced by the defendant was quite as satisfactory as plaintiff's testimony was unsatisfactory; and having all of the witnesses present and available, we proceeded with the introduction of their testimony, confident that the defendant's position could not be prejudiced thereby."

We think there is no prejudicial error in this record. The judgment is affirmed.

MR. JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE JACKSON concur.