## Hutchings et al. v. Louisville Trust Co.

October 25, 1946.

148

Peter, Heyburn & Marshall for appellants.

Davis, Boehl, Viser & Marcus for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

This action was instituted by William E. Hutchings, Jr., and Eleanor H. Goring, beneficiaries under a trust created by their grandfather, against the Louisville Trust Company, their trustee, wherein they charged mismanagement of the trust fund through self-dealings and improper investments. A general demurrer was sustained to the petition as amended and upon appellants' refusal to plead further, it was dismissed and they appeal.

As a matter of convenience appellants will be referred to as plaintiffs or beneficiaries when not called by name, and appellee as defendant, or Trust Company, or trustee. The National Bank of Kentucky will be referred to as the Bank, and Banco Kentucky will be called Banco. As a demurrer was sustained to the plaintiffs' petition as twice amended, it naturally follows that the facts stated in this opinion are taken from that pleading.

Eusebuis Hutchings, who died in 1878, created a trust for the benefit of his daughter, Carolyn, for life with remainder to her heirs. The plaintiffs, a nephew and a niece of Carolyn, were seventeen and eight years of age, respectively, when Carolyn died on November 1, 1929, and they became entitled to one-fourth of the trust estate. In 1927 the Bank and the Trust Company

pooled their assets under a trust agreement between themselves whereby Trustee Participating Certificates were issued in lieu of stock in those two institutions, which certificates represented 99.55 per cent of the Bank stock and 98.49 per cent of the Trust Company stock, or 99.23 per cent of the combined Bank and Trust Company stocks.

When the Trust Company became trustee of the Hutchings' estate in 1929, one of the assets was 120 participating certificates which represented stock of the Bank. In that year the directors of the Trust Company and of the Bank decided to organize a holding company, Banco Kentucky, to which they turned over all their assets and exchanged their participating certificates for the capital stock of Banco, which was capitalized at $20,-000,000. The officers and directors of the Bank and of the Trust Company served as such in Banco without additional compensation since such service was to redound to the benefit of the Bank and of the Trust Company. In carrying out this plan Banco was chartered on July 16, 1929, and a campaign was immediately inaugurated by its directors and officers to convert the participating certificates into the capital stock of Banco (which was $25 par), and to sell to the public the remainder of the stock in that institution.

At that time the participating certificates had a market value of $45 and it was the plan of the officers and directors of Banco to issue two shares of its stock for each participating certificate, thereby they would make $5 on each certificate converted into Banco stock. All the 40 directors of Banco, except one, acquired a considerable number of shares of Banco stock running from a low of 100 shares to a high of 39,600 shares, with a great many of them acquiring blocks of more than 1,000 shares. But the Banco stock was not being subscribed as rapidly as its president thought it should be and on August 26, 1929, he addressed a letter ''To Our Office Family'' calling upon each officer to sell 10,000 shares, saying the Bank would lend money on the new stock but would lend none for the purchase of old stock. The Bank loaned nearly $6,000,000 and the Trust Company nearly $3,000,000 of their respective funds for the purchase of Banco stock, and these sums were secured in whole or in part by the pledge of this stock as collateral.

On September 10, 1929, there were outstanding 553,-860 participation certificates and it was essential to the formation of Banco that 276,960 of them should be exchanged for Banco stock on or before September 19th of that year. There had been deposited with the trustee only 261,838 of these certificates prior to September 10th, so on or about September 19th the defendant exchanged 20,530 of the 20,940 participation certificates it held in fiducial capacities for 41,060 shares of Banco. This exchange was made without the approval of any court and was in violation of KS sec. 4706 then in effect. Included in these 20,530 certificates so exchanged for Banco stock were 1,200 participation certificates held by the trustee for the Hutchings estate (the original 120 certificates having been exchanged by the trustee on September 11, 1929, for 1,200 such certificates when the par value of them was reduced to $10), for which it received 2,400 shares of Banco.

As above stated, Carolyn died November 1, 1929, and the then infants, as remaindermen in the trust, became entitled jointly to one-fourth of the trust estate. On April 21, 1930, the defendant delivered to the guardian of the infants, whom the briefs say was their mother, 600 of the 2,400 shares of Banco stock which it had acquired in the exchange of the participation certificates. The petition averred that thereafter Banco became insolvent, its stock worthless and subsequently a receiver of the National Bank of Kentucky recovered of plaintiffs $1,739.22 as an assessment levied against them as a result of their owning 600 shares in the insolvent Banco; that their interest in the participating certificates at the time they were exchanged for Banco stock had a market value of $15,000 and they seek to recover $16,739.22 against the defendant; that the defendant was disloyal to them and acted for its own selfish interest and in the interest of Banco by investing the trust fund in Banco stock.

There is no doubt but that the petition charged defendant with a breach of trust in that it invested the trust fund in an enterprise in which it was financially interested and for its own advantage rather than that of the beneficiaries, a practice which was condemned in the recent case of Bryan v. Security Trust Co., 296 Ky. 95, 176 S. W. 2d 104. Also, see In re Trusteeship of Stone,

138 Ohio St. 293, 34 N. E. 2d 755, 134 A. L. R. 1306, and the annotations that follow. Nor can it be doubted that Banco stock was an improper investment for trust funds as charged in the petition. Section 4706, KS of our 1930 Statutes, which was in effect in 1929, provided such funds shall not be invested in the securities of a corporation which has not been in operation for more than ten years. Banco had not been in operation but a few months at the time this trust fund was invested in its stock, and such an investment has been held to be in violation of sec. 4706. Robertson v. Robertson's Trustee, 130 Ky. 293, 113 S. W. 138, 132 Am. St. Rep. 368; Wood v. First American Bank, etc., 278 Ky. 526, 128 S. W. 2d 971.

But it is insisted by defendant that as Banco did not become insolvent until November 1930 after it turned over the 600 shares of its stock to the guardian on April 21, 1930, the averment in the petition "that thereafter Banco became insolvent and its stock worthless" was not an allegation that plaintiffs suffered any loss by reason of defendant's wrongful act, as the petition is silent as to the value of the Banco stock at the time it was distributed.

The petition states facts showing defendant was fully acquainted with the hazards of the grandiose undertaking in forming Banco and that the mother of plaintiffs in accepting the stock as their guardian was unaware of how speculative it was. This is tantamount to an averment that the stock was not as valuable as the certificates at the time it was distributed. The petition further avers that the trustee wrongfully invested funds of the estate in the stock of a corporation which only a few months previously had been created and one in which it was vitally interested financially and that thereafter this stock became worthless. Under the facts disclosed in the petition this is equivalent to an averment that the plaintiffs suffered a loss by reason of defendant's wrongful act in purchasing Banco stock with the trust funds. The purpose of the statute is to prevent a trustee from investing in hazardous, or any but seasoned, stocks. When in the face of the statute the trustee does invest the trust funds in a forbidden stock and the estate sustains a loss thereby, the liability of the trustee has been created and the averment of those facts states a cause

152

of action. A trustee cannot flagrantly violate its duty and then relieve itself of liability by turning over to the beneficiary just before it becomes worthless a lot of stock that, to say the least, is highly speculative.

It is further argued by defendant that even if it did breach its duty by investing trust funds in Banco stock no loss resulted to the estate by reason thereof, and that the loss was occasioned by plaintiffs' guardian holding the stock for more than seven months after receiving it instead of selling the stock on the market at the time it was received, or soon thereafter. Defendant's general proposition, that although the trust was violated by it imprudently investing the funds yet it incurred no liability in the absence of a loss to the estate, is supported by the authorities it cites, 39 C. J. S., Guardian and Ward, sec. 84, p. 139; 53 Am. Jur. "Trusts" sec. 300, p. 238; 65 C. J. "Trusts" sec. 525, pp. 661, 662; 2 Scott on Trusts, 1096. However, at this time we are not passing on the fact of whether or not a loss was suffered by plaintiffs by reason of defendant's breach of trust, but merely whether the petition avers that such a loss was suffered by plaintiffs.

Plaintiffs are attempting to recover for the loss or drop in value of this trust estate resulting from a breach of trust by the defendant. This they may do. Restatement of the Law of Trusts sec. 205, p. 553. The petition states a cause of action and the chancellor erred in sustaining a general demurrer thereto and in dismissing the petition.

The judgment is reversed for proceedings consistent herewith.