No. 18,346.

H. GORDON HOWARD *v.* INTERNATIONAL TRUST COMPANY, SPECIAL ADMINISTRATOR, ETC.

(338 P. [2d] 689)

Decided April 27, 1959. Rehearing denied May 18, 1959.

Mr. H. GORDON HOWARD, pro se.

Messrs. HOLLAND & HART, Mr. WILLIAM C. McCLEARN, Mr. PHILIP A. DANIELSON, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in error H. Gordon Howard was defendant in the trial court and Mary Steinhart was plaintiff in an action to compel a reconveyance of property located in

the State of Illinois. Judgment was for the plaintiff and the defendant is here by writ of error seeking reversal. Subsequent to the trial of the case below, the plaintiff Mary Steinhart died and the International Trust Company, as her personal representative, was substituted as plaintiff and appears as defendant in error in this court. We will refer to the parties as they appeared in the trial court, or by name.

It is alleged in the complaint that the defendant Howard, while employed by plaintiff as a real estate agent to sell her Denver residence property, fraudulently and without her knowledge, induced her to execute a general warranty deed conveying to Howard a parcel of farm land in LaSalle County, Illinois, in which she owned a life estate. She prayed for an order requiring Howard to reconvey the Illinois property to her and for other relief. Defendant, by answer, denied the allegations of the complaint and by counterclaim alleged that plaintiff had fraudulently represented that she owned the fee title to the Illinois land and that relying upon such representation he had purchased the same from her for a consideration of $6000.00 paid to her in cash. He prays for a rescission of the transaction and return of the money allegedly paid and for other relief.

A chronology of events leading to the filing of this action appears from the record briefly as follows: The plaintiff, Mary Steinhart, a widow of eighty-eight years of age with failing eyesight, on March 28, 1956, was the owner of a property at 841 Adams Street in Denver, which she had occupied as a residence for many years. At that time she was also the beneficiary of a life estate in 30 acres of farm land in LaSalle County, Illinois, which had been devised to her by the will of her father, with the remainder to two half-sisters. The defendant Howard at the times mentioned was a licensed real estate broker, as well as a licensed attorney at law, with offices at 1336 East Colfax in Denver. On the date mentioned Mrs. Steinhart (whether at her request or upon

defendant's solicitation is in dispute) executed an exclusive agency agreement with Howard for the sale of the residence property at 841 Adams Street. On the same day a contract for the sale of the property was entered into by Howard on behalf of Mrs. Steinhart with third parties. This contract resulted in sale of the property, the transaction being concluded on May 23, 1956. While this matter was pending Howard had occasion to contact Mrs. Steinhart several times. One such occasion being a few days after the contract for the sale of the residence property had been entered into, when he called for her at her home and drove her to the Burns Vault Building, where she maintained a deposit box, for the purpose of obtaining the abstract of title to the Adams Street property. While returning from this errand the defendant inquired whether she had any income property, to which she replied that she had an interest in some farm land near the town of Ransom, Illinois. She asserted that nothing more was said concerning the farm property. Howard's testimony is that she told him she owned a farm in Illinois consisting of 160 acres, and that she was anxious to sell it and asked him to make an offer for it. In any event, while returning to her home they stopped at his office on East Colfax Avenue. He entered the office while she remained in the car; after about fifteen minutes he returned and they continued on to her home at 841 Adams Street. Upon arrival there he produced some papers which he said required her signature in connection with the sale of the residence property. She testified that she was unable to read them but trusted Mr. Howard and affixed her signature to such papers as he directed.

On April 17, 1956, the plaintiff vacated her residence at 841 Adams Street and moved to an apartment at 32 Washington Street. On May 24, 1956, a warranty deed, dated and acknowledged May 8, 1956, conveying the Illinois farm property from plaintiff to defendant, was recorded in the office of the Register of Deeds of LaSalle

County, Illinois. The signature to this deed and to a receipt acknowledging payment of the sum of $6,000, in cash as consideration for the conveyance, are acknowledged to be genuine signatures of the plaintiff. Aside from the deed and the receipt mentioned, no other record of the transaction was made or kept by the defendant, although, as he testified, he had been a licensed real estate broker and lawyer for many years.

It was shown that it was customary for the plaintiff to write her correct address on all checks or letters signed by her, and it appears that prior to April 17, 1956, she wrote her address on all such documents as 841 Adams Street, and thereafter as 32 Washington Street. The receipt which it is claimed the plaintiff signed in connection with the sale of the farm property, acknowledging receipt of $6,000, is dated May 8, 1956, at which time she was residing at 32 Washington Street. However, the address noted on the receipt in her handwriting is "841 Adams Street," followed by her telephone number at that address. Howard testified that when the receipt was signed he requested her to also write her address and telephone number thereon. A friend of fifty years testified that she had never known Mrs. Steinhart to write a wrong address on a check or letter. It appears clear that Mrs. Steinhart either departed from her long-standing custom and habit in this single instance by writing an incorrect address and telephone number on the receipt in question, or that the document was signed at some time prior to April 17th. In early June she wrote a letter to the tenant who operated the farm enclosing a check for the purchase of seed and other farm expenses. On July 2nd after the bona fides of the transaction had been questioned by plaintiff's counsel, the defendant wrote a letter to "Albert Keetz," tenant on the Illinois farm, whose correct name is "Kates," inquiring as to plaintiff's title and stating that if it consisted only of a life estate, he had been given a "gypping." On August 6, 1956, defendant was served with summons and

complaint in this action, and on the same day executed what is titled "Voluntary Declaration of Trust" in which he declares that he holds title to the Illinois farm property as trustee in trust for the benefit of his wife, Gladys Iola Howard, and his minor son.

Mrs. Steinhart testified that she had never knowingly signed the warranty deed or the receipt, and that she had never been in defendant's office; that she did not know the legal description of the Illinois property and had not communicated it to defendant; that she had never offered to sell the property to defendant and had not done so, and had never received $6,000 or any other sum of money from him.

Defendant testified that plaintiff importuned him on several occasions to purchase the Illinois property, representing to him that she was the fee owner and that the farm consisted of 160 acres. That in late March or early April he wrote to brokers and an abstract company in LaSalle County requesting information as to the character and value of property in that county owned by plaintiff. Two of these parties responded advising him that a farm property consisting of thirty acres was assessed to Mrs. Steinhart in that county and that its assessed value was $5,900. Upon receipt of this information defendant concluded that Mrs. Steinhart was a "crook and trying to defraud me," and forthwith destroyed all of the correspondence with the brokers and abstract company relating to the character and title of the land, including copies of his letters of inquiry. He was unable to recall the contents of the letters or to remember the names of the firms with which he had corresponded, stating that after he found out that she was a "crook" he wanted nothing more to do with the matter; threw the letters away and wanted to forget it. However, notwithstanding his vigorously expressed opinion of the plaintiff's low moral character and his complete ignorance of the character or extent of her title, and without observing the normal precautions invariably

taken by a lawyer to avoid buying a "pig in a poke" when dealing in his own interest, he succumbed to her importunities and overnight agreed to buy the farm and pay her $6,000 in cash therefor in compliance with her demand for the money in cash, that she might keep knowledge thereof from her attorneys and avoid the payment of income taxes on the transaction. The agreement to buy the farm, according to defendant, was reached on May 7th in response to a telephone call from Mrs. Steinhart, and concluded the next morning, May 8th, at which time she came to his office where the deed was prepared, the receipt signed and the money ($6,000 in cash) which he obtained from a trunk in a closet in the bathroom of his home, paid over to her. Defendant produced a witness who testified to being present at the time the receipt was executed and the money paid over, and who accompanied defendant and Mrs. Steinhart to a notary's office where the deed was signed and acknowledged. Both the notary and her employer testified that on the day in question the defendant, with an elderly lady whom they identified as the plaintiff, and another man, came to the office where the deed in question was signed and acknowledged by the lady.

By the testimony of an expert in the field of questioned documents, it was shown that the receipt for $6,000, admittedly signed by the plaintiff, was not typed in its entirety at one insertion in the typewriter. The words "Seller" followed by a line for signature, and "Address of Seller" followed by a similar line were typed at one insertion and the body of the instrument at another. His testimony was illustrated by exhibits consisting of enlarged reproductions of the receipt showing that the vertical alignment of the letters in the body of the instrument do not correspond with the letters in the "Seller" and "Address of Seller" lines. This, according to the expert, shows that the receipt was not typed in its entirety at one insertion in the machine, but that the body thereof was typed at one time and the "Seller"

and "Address of Seller" lines at another. Defendant at first testified that the entire receipt had been written at one time, but upon being confronted with the testimony of the expert, stated that he had taken the receipt out of the typewriter three or four times to consult with Mrs. Steinhart respecting its contents.

Trial was to the court resulting in findings and judgment for plaintiff. Motion for a new trial was dispensed with. Notwithstanding which, the defendant filed two such motions, as well as a motion to vacate the judgment; all of which were overruled.

Based upon the evidence we have outlined, the trial court in its findings made the following observation:

"All of these facts can lead the Court only to the conclusion that defendant at the time he handled the sale of the Adams Street property for this plaintiff, knowing the plaintiff could not see, inserted a blank deed which the plaintiff signed, and inserted a blank piece of paper which was later typed up as a receipt, which the plaintiff also unknowingly signed, and then recorded the deed in the State of Illinois in attempting to gain control of plaintiff's property."

Sixteen grounds of error are assigned, which may be reduced to four main contentions: 1. That the evidence does not support the judgment. 2. That necessary parties were not brought into the action. 3. The court abused its discretion in overruling defendant's second motion for a new trial on the ground of newly discovered evidence. 4. The admission of incompetent and irrelevant evidence.

█ 1. The first and fourth grounds may be considered together. The evidence, as will be observed, was in irreconcilable conflict, and from the quoted remarks of the trial court it is apparent that the testimony of the defendant and that of his witnesses was rejected. Unless we can say that the findings and conclusions of the trial court are so manifestly against the weight of the evidence as to compel a contrary determination, they are binding upon this court.

 It was the duty of the trial court to resolve the conflicting contentions of the parties and to determine where the truth lay. That the trial judge chose to credit the testimony of the plaintiff as against that of the defendant, indicates that he was not impressed with the demeanor or convinced of the veracity of the defendant or of his witnesses as they appeared before him at the trial. That defendant's explanation of the manner in which the negotiations for the purchase of the farm land were initiated and carried out was a severe strain upon the credulity of the trial judge, cannot be doubted. That a lawyer and real estate broker of many years experience, while under employment as agent for the sale of residence property, would undertake to deal with an eighty-eight-year-old partially blind widow to his own advantage in respect to other property owned by her, admittedly worth double the amount allegedly paid, and, contrary to all approved business practices paid the money to her, not by bank draft or check, but in currency, and with funds not withdrawn from a bank account and susceptible of proof, but obtained from a secret hoard kept by him in a trunk in the closet of his bathroom, is a serious challenge to the receptive processes of a reasonable mind. No effort was made to trace this large sum of cash into the assets of the plaintiff to determine whether she deposited it in a bank account or otherwise disposed of it.

"It is, therefore, a question for the trial court as to the convincing effect of the evidence. * * * It is that court, not this, which must determine the credibility of the witnesses, pass upon the weight of the evidence and find the facts." *Davis v. Pursel,* 55 Colo. 287, 134 Pac. 107.

We conclude that the plaintiff's evidence, and the legitimate inferences to be drawn therefrom, was ample to sustain the findings and judgment of the trial court.

 As to the numerous objections to the admission of evidence as incompetent, immaterial or hearsay, it

need only be said that where, as here, trial is to the court, the presumption prevails that all immaterial, incompetent or hearsay evidence was disregarded by the court in reaching its conclusions, and a judgment will not be reversed because of the admission of such evidence. *Vanadium Corp. v. Wesco Stores,* 135 Colo. 77, 308 P. (2d) 1011.

2. It is contended by defendant that the court erred in not requiring his wife, Gladys Iola Howard, and his infant son to be made parties to the action. The basis of this contention is that on August 6, 1956, by coincidence it being the same day upon which defendant was served with process in this action, he executed the voluntary declaration of trust before referred to. Although defendant asserts that he is counsel for these parties, he made no effort during the months the matter was pending before trial to have them made parties or intervene in the action, or otherwise assert any claimed rights. Some discussion was had on the day the trial began as to whether these parties should be brought into the case, and both the court and plaintiff's counsel indicated agreement provided the trial would not be delayed. The trial court called defendant's attention to the requirements of the Rules of Civil Procedure relating to intervention, and no further point was made of the matter.

The action being in personam directed only to Howard, and no relief of any kind being asserted or sought against the beneficiaries of the alleged trust or any other persons who might have or claim an interest in the Illinois property, no determination of their rights is or could be had in this action. In addition the claim is wholly inconsistent with the position taken by defendant in his answer and counterclaim, filed months after the execution of the alleged trust, wherein he seeks rescission of the transaction on the ground of fraud, and a return of the consideration allegedly paid. No mention is made therein of the interest of any other person in the

controversy. It was not error, under the circumstances, to decline to entertain an informal motion, made on the day of the trial, to make these parties defendants in the action. It may be noted in passing that if the plaintiff's interest in the Illinois farm was a life estate only, as appears to be the case, then whatever interest the defendant acquired by the deed in controversy, or which was transmitted to the beneficiaries by his declaration of trust, terminated upon the death of the plaintiff.

3. Error is assigned to the overruling of defendant's motion for a new trial. The first of these was based upon alleged newly discovered evidence, and is supported by the affidavits of Howard and of a Mrs. Montoya who claimed to have been present in Howard's office at the time Mrs. Steinhart executed the receipt for $6,000 and received the money. She did not contact defendant before or during the trial, asserting that she had no knowledge of the pending litigation until reading of it in the newspapers. The testimony of this witness, had it been available at the trial, would have been cumulative only, her affidavit reciting facts identical in most particulars with the testimony of Howard and other witnesses, would increase by one the number of witnesses who claimed to be eye witnesses to one phase or another of the transactions of May 8, 1956, and while adding to the aggregate weight of the witnesses, would add nothing to the weight of the evidence. The second motion was grounded on the provisions of Mrs. Steinhart's last will and a codicil thereto, probated following her death, which it is said refutes her testimony given at the trial that her interest in the Illinois property was only a life estate. An examination of the exhibits attached to this motion convinces us that there is no merit in this contention. The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court, and in the absence of an abuse of that discretion

will not be disturbed. *Walsmith v. Hudson,* 77 Colo. 326, 236 Pac. 783.

The trial court, presiding at the trial with admirable patience and fortitude, saw and heard the witnesses on both sides of the controversy, observed their manner and demeanor on the witness stand, and resolved the conflicts in the evidence favorable to the plaintiff. There being sufficient competent evidence to support the findings, the judgment must be and is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DOYLE not participating.