## No. 19,581.

### Thomas K. Hudson *v.* The American Founders Life Insurance Company of Denver.

(377 P. [2d] 391)

Decided November 5, 1962.   Rehearing denied January 14, 1963.

Mr. CLARENCE W. BUTTON, Miss ALICE LOVELAND, for plaintiff in error.

Messrs. YEGGE, HALL and SHULENBURG, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE DAY.

IN the trial court, plaintiff, The American Founders Life Insurance Company, of Denver, Colorado, obtained a judgment against defendants Thomas K. Hudson and Robert E. Holland jointly and severally for $37,400.00 and costs. This judgment is questioned by separate writs of error filed each by Hudson and Holland. As to the judgment against Holland, that decision in case No. 19,582 is announced this date. See *Holland v. American Founders,* 151 Colo. 69.

We shall refer to the parties as they appeared in the trial court or by name.

The complaint states four separate claims against Hudson, Forrest C. Roan and Robert E. Holland. We are concerned here only with the first claim as it relates to Hudson. The second and third claims were volun-

tarily dismissed by plaintiff before trial, and the fourth claim was dismissed on trial.

Plaintiff alleged that in February and March, 1956, Hudson was president of plaintiff corporation, a member of its board of directors, and, therefore, sustained a fiduciary relationship to the plaintiff. These allegations were admitted in Hudson's answer.

The complaint alleges that during February and March, 1956, Hudson was a director of Texas Adams Oil Company, Inc. and was fully familiar and conversant with the affairs, assets and business of said corporation; that in violation of his fiduciary relationship to plaintiff, Hudson unlawfully procured and caused the issuance of and delivery to Clarence W. Button of 15,000 shares of the common stock of plaintiff in exchange for shares of the Texas Adams Oil Company, Inc.; also that about said time he unlawfully procured and caused the issuance and delivery of 9,000 shares of the common stock of plaintiff to Alice Loveland and Charlotte Brown in a similar transaction involving exchange for shares of stock of Texas Adams Oil Company, Inc.; that at the time of the exchanges of stock the value of plaintiff's stock was $2.00 per share and that the Texas Adams Oil Company, Inc. stock was of doubtful value; at the time the complaint was filed the Texas Adams Oil Company stock was worthless and that said company was adjudged a bankrupt in March 1957 and was defunct. The complaint stated that plaintiff had received only $1,000.00 for the Texas Adams Oil Company stock. Plaintiff prayed for damages in the sum of $47,000.00.

Hudson, by his answer, in addition to an allegation that the complaint fails to state a claim, admitted the issuance and delivery to Button of 15,000 shares of the common stock of plaintiff and denied the material allegations of the complaint other than those above mentioned. As affirmative defenses he asserted: That there was contributed to plaintiff 8,000 shares of the common

capital stock of plaintiff corporation as a donation in said transaction and that said stock was accepted and retained by plaintiff corporation in full accord and satisfaction; that plaintiff holds and retains as its property all stock of Texas Adams Oil Company received by it in the transaction and therefore is estopped to make any claim based upon such transaction; that all of Hudson's acts as an officer and director of plaintiff, and especially the so-called Texas Adams transaction, were ratified and confirmed by the stockholders of plaintiff at an annual meeting in March 1956 and again at the annual meetings of plaintiff stockholders in 1957 and 1958.

Following trial to the court, judgment was entered in favor of plaintiff and against defendants Hudson and Holland jointly and severally in the sum of $37,400.00. To the findings and conclusions of the court and to the judgment entered thereon Hudson assigns error under three categories:

1. That the evidence does not support the findings of fact or conclusions of law of the trial court nor the amount awarded as damages;

2. That the court erred in ruling out the defenses of accord and satisfaction and ratification;

3. That the court erred in failing to grant a new trial on the ground of newly discovered evidence.

1. ON THE QUESTION OF THE SUFFICIENCY OF THE EVIDENCE.

Under this point Hudson has grouped his contentions that there was no showing that he breached his fiduciary obligation to American Founders, and that even if the court should hold against him on that issue, the amount of damages is excessive and unsupported by the record. We deal with these points in that order.

The duties and obligations of executive officers and directors of corporations under Colorado law are stated in *Kullgren v. Navy Co.*, 110 Colo. 454, 135 P. (2d) 1007:

"The relation which directors bear to the stockholders of a corporation, and the corporation itself, as 'universally conceded * * * is a fiduciary one;' and 'The law governing the obligations of fiduciaries is applicable to them.' *Mackey v. Burns,* 16 Colo. App. 6, 64 Pac. 485. 'A director of a corporation is in the position of a fiduciary; that is a principle deeply rooted in our law. He owes loyalty and allegiance to his corporation, a loyalty that is undivided and an allegiance that is influenced in action by no consideration other than the welfare of his corporation. He is held "in official action, to the extreme measure of candor, unselfishness and good faith. Those principles are rigid, essential and salutary." ' *Turner v. American Metal Co.,* 36 N.Y.A. (2d) 356, 369. 'The directors of a corporation act in a strictly fiduciary capacity. Their office is one of trust and they are held to the high standard of duty required of trustees. * * * ' "

To the same effect see *Sprague v. Stratton-Massachusetts Gold Mines Co.,* 53 Colo. 315, 125 Pac. 490. Also see 13 Am. Jur., Corp. 939, §985.

That Hudson was so bound is admitted and was fully established by the evidence. We, therefore, look to whether he violated the duties and obligations of such relationship.

The evidence is that Hudson procured or caused the issuance of the stock certificates to Clarence W. Button, Alice Loveland, and Charlotte M. Brown, and signed the certificates. When he signed the five stock certificates he knew they were being issued in exchange for Texas Adams stock as the only consideration and as "payment in full" for stock of plaintiff corporation.

Button testified that his discussions regarding the issuance of the stock of plaintiff corporation in exchange for Texas Adams stock were solely with Hudson, and that he delivered the Texas Adams stock certificates to Hudson.

Hudson admitted full responsibility for the Texas

Adams transaction. The minutes of the shareholders meeting of March 12, 1957, contained the following statement by Hudson: "Mr. Hudson replied that *this was not a cash transaction but rather an exchange of stock in The American Founders Life Insurance Company* of Denver, Colorado, for the stock in the Texas Adams Oil Company. At this point Mr. Hudson advised that as President of the company, *he was assuming the responsibility* for the investment and further stated that the President of many companies should not attempt to avoid responsibilities for those things which might occur and that *he was not going to attempt to pass any blame onto any one else for anything which occurred in the company, * * * ."* (Emphasis ours.)

Issuance of The American Founders stock to Button, Loveland and Brown involved a breach of the so-called "underwriting agreement" between plaintiff corporation and Colorado Management Corporation. Under that agreement Colorado Management Corporation was the sole and exclusive agent of plaintiff for the sale to the public of one million shares of stock in plaintiff corporation. The contract provided that the stock was to be sold at "$2.00 per share to the public;" and that the underwriter agreed "to remit to the Company the sum of $1.60 per share on any share sold by it hereunder, the same being the sales price of $2.00 per share, less the commission of forty cents per share or 20% of the sale price of the stock to the public at $2.00 per share, and the *Company agrees to issue such shares upon receipt of payment therefor as directed by the underwriter."* (Emphasis ours.) The so-called "underwriting" agreement therefore provided that the shares of the plaintiff corporation should not be issued until "payment therefor" was received in cash at $1.60 per share. The prospectus of plaintiff corporation filed with the Colorado Securities Commission on October 20, 1955, stated that none of its securities would be used *directly*

*or indirectly* to purchase any property, real or personal, tangible or intangible.

Other facts supporting the court's finding that Hudson violated his fiduciary obligations and duties to the plaintiff corporation were that Hudson did not consult with or discuss the Button transaction at any regular or special board meeting at which there was a quorum prior to the date of the transaction. The record on this point is that at an *informal meeting* in the *offices of the Colorado Management Corporation* on February 9, 1956, Hudson discussed the transaction with Forrest Roan and J. R. Holt, both officials of Colorado Management Corporation. Franklin Stewart and Robert E. Holland, interlocking directors of the plaintiff corporation and also of Colorado Management Corporation, were present at this meeting. After discussing the proposed exchange of Founders stock for Texas Adams stock, Hudson asked if those present would favor a waiver of the provisions of the subscription agreement and underwriting agreement, which, in effect, limited sales to the public to 5,000 shares to any individual stockholder. Those present, including Holland, indicated that they would favor such waiver in the Button transaction. However, Holland stated that he was opposed to the transaction unless and until a market was obtained for the Texas Adams stock and said stock was sold and converted into cash before issuance of the stock in plaintiff corporation to Button. E. V. Holland, another director of both plaintiff corporation and Colorado Management Corporation, was consulted by telephone. He expressed his willingness to waive the 5,000 share limitation, but also objected to the transaction unless and until a market for the Texas Adams stock was established and the said stock was converted into cash before issuance of stock in the plaintiff corporation. This meeting was not a special or regular meeting of the board of plaintiff corporation, but was rather an

informal discussion among the Colorado Management officials.

After this meeting, Hudson completed the Button transaction. The Loveland-Brown transaction was never discussed with the directors of plaintiff corporation. Although there were at least nine regular or special meetings of the board of plaintiff corporation prior to January 17, 1957, Hudson did not disclose to all directors that either of the questioned transactions had been completed, nor request formal approval thereof. The first time Hudson discussed the Texas Adams stock with the board of directors and requested formal action was at a special meeting of said board held pursuant to notice on January 17, 1957, when after discussion the board adopted a resolution directing that the Texas Adams Oil Company stock held by the corporation be sold immediately "at present market." Thus there is sufficient competent evidence to establish that Hudson personally caused the issuance of stock certificates for 24,000 shares of stock of plaintiff corporation, not only without authority from the board of directors but without any information being imparted to the board of directors until eleven months after the Texas Adams transactions had been completed. Suffice it to say that such evidence is sufficient to establish violation of the duties and obligations of the presidency which also carried with it management of the company.

As to the evidence being sufficient in law and in fact to support the amount of the judgment in the sum of $37,400.00, a good statement of the rule on the measure of damages in an action against a fiduciary is set forth in American Law Institute, Restatement of the Law (2d) Trusts, §205, p. 458, as follows:

"Liability in Case of Breach of Trust.

"If the trustee commits a breach of trust, he is chargeable with

"(a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or

"(b) any profit made by him through the breach of trust; or

"(c) any profit which would have accrued to the trust estate if there had been no breach of trust."

\* \* \*

"If as a result of his breach of trust property depreciates in value, the trustee is chargeable with the amount of such depreciation."

See also: *Hutchings v. Louisville Trust Company,* 303 Ky. 147, 197 S.W. (2d) 83; 54 Am. Jur., Trusts, §377, p. 296.

The trial court determined the amount of damages by computing the value of 24,000 shares of plaintiff's stock at $1.60 per share (the amount in cash which should have been received) or $38,400.00 less $1,000.00 received from Colorado Management Corporation from the sale of the Texas Adams stock, a total sum of $37,400.00.

Against that simple mathematical computation by the court, Hudson claims off-set in the amount of $47,000.00 — claimed value of the Texas Adams stock. Testimony to support this claim was offered to the effect that there was an over the counter bid figure of eighty cents per share for the Texas Adams Oil Company stock in February and March 1956. But other evidence showed this not to be the true value because the market for said stock was "extremely thin" and could not absorb a large block of shares without a drastic drop in the price. On this a witness said, "Like a lot of similar stocks you could buy all you wanted but couldn't sell it." In October 1956 the record reveals the bid price for Texas Adams stock was down to two cents per share. Another witness testified that even by persistent effort he was unable to establish any market for the Texas Adams shares in October 1956. In December 1956, upon advice of the auditor of plaintiff corporation, the Texas Adams Oil Company shares were written off as worthless. On

February 25, 1957, Texas Adams Oil Company, Inc., was adjudged bankrupt. Early in 1957, following the resolution of the board of directors on January 17, 1957, to sell the Texas Adams stock "at the present market" the 58,750 shares of Texas Adams Oil Company stock were sold to Colorado Management Corporation for $1,000.00, although the ·shares were never delivered nor was delivery requested.

■ Hudson further contends that to repay American Founders he and two other directors plus Roan "each contributed to plaintiff 2,000 shares of their option stock." There is no question but that 2,000 shares were transferred from the record holdings of each of the above mentioned persons in May 1957. However, Hudson and all other contributors of the donated stock had obtained their shares by signing notes secured by this same stock. The notes were never paid and at the time said stock was "donated" to plaintiff corporation the notes given in payment therefor were cancelled. The entire transaction was a "wash-out" and could not and did not mitigate the damage to American Founders.

2. THE QUESTION OF ACCORD AND SATISFACTION.

■ On the defense of accord and satisfaction based on the same "donation" of 8,000 shares of American Founders stock, the evidence does not support this contention. Elements necessary to establish accord and satisfaction may be found in *Western Air Lines, Inc., v. Hollenbeck,* 124 Colo. 130, 235 P. (2d) 792, quoting from *Pitts v. National Independent Fisheries Co.,* 71 Colo. 316, 206 Pac. 571, as follows:

"In order to constitute an accord and satisfaction, it is necessary that the money should be offered in full satisfaction of the demand, and be accompanied by such acts and declarations as amount to a condition that the money, if accepted, is accepted in satisfaction; and it must be such that the party to whom it is offered is

bound to understand therefrom that if he takes it, he takes it subject to such conditions."

See also: 1 Am. Jur. 222, Accord and Satisfaction, §21; 1 C.J.S. 522, Accord and Satisfaction, §33.

The minutes of plaintiff corporation indicate that at a special meeting of the board of directors, held on November 4, 1957, E. V. Holland, as apparent spokesman for the so-called donors, stated that, "four of the directors had donated 2,000 shares each of their stock to recoup the losses incurred in this transaction and that they had no legal duty to do so. However, they felt that this would be the proper thing to do due to the loss incurred." The only action noted upon the minutes of such meeting was a withdrawal of the Texas Adams Oil Company item from further discussion. At the meeting no formal resolution was presented or adopted indicating that the donated shares were accepted as accord and satisfaction of the loss sustained by the corporation in the Texas Adams transactions. The minutes stand uncontradicted.

Another affirmative defense argued is that American Founders through its board ratified and confirmed the so-called Texas Adams transaction at the annual meetings held March 13, 1956, March 12, 1957, and March 11, 1958. The record does not support this contention.

At the first annual meeting of the stockholders on March 13, 1956, a so-called "balance sheet" as of March 10, 1956, was distributed to the stockholders in attendance. In the assets set forth therein is an item "Stock owned $47,600.00." The record indicates that there was some testimony to the effect that the stock owned item was discussed and explained, at least to the extent that the stock owned was Texas Adams Oil Company stock. Several witnesses testified that the stock owned item was not discussed in any particularity at all. Other witnesses testified that they did not recall any mention of Texas Adams stock at said meeting. Prior to such discussion, either of stock owned, or of the Texas Adams

Oil Company stock, as may have occurred at such meeting, the stockholders voted favorably on a motion to approve all *lawful* acts and deeds of the officers of plaintiff corporation. The minutes of the annual meeting of March 12, 1957, indicate that the stockholders again approved all *lawful* acts and deeds of the officers of said corporation. Significantly this action by the stockholders was again taken prior to discussion of the Texas Adams stock transaction. These minutes indicate that in response to a question by one of the stockholders concerning the investment of company funds in Texas Adams Oil Company, Mr. Hudson replied, "This is not a cash transaction but rather an exchange of stock in The American Founders Life Insurance Company of Denver, Colorado, for stock in the Texas Adams Oil Company." Hudson also stated that "As President of the Company he was assuming the responsibility for the investment. * * * " The minutes indicate that after Hudson's statement concerning the Texas Adams transactions there was a considerable discussion from the floor concerning said transaction. The minutes do not indicate any discussion of the specific or exact details of the transaction or that all of the material facts concerning said transaction were presented or explained to the stockholders. The call for the meeting did not indicate that any formal action was to be taken concerning the Texas Adams transaction. Said notice indicated that the meeting was called for the purpose of "electing directors and for the transaction of any other business that may properly come before the meeting." The minute book of plaintiff corporation does not contain any minutes of the annual stockholders meeting of March 11, 1958.

In a recent decision this court held that the stockholders' approval of all lawful actions of corporation officers and directors for the preceding year in the same or similar manner as indicated by the foregoing evidence does not constitute or establish ratification by

the stockholders of acts or transactions which the law regards as unlawful or invalid. In *Colorado Management Corporation v. The American Founders Life Insurance Company,* 145 Colo. 413, 359 P. (2d) 665, is the following comment on this exact point:

"The approval of minutes of a preceding meeting is nothing more than an acknowledgment that the secretary has properly recorded the acts of the board and is not a legalization of invalid acts recorded therein. See *In re Chelsea Exchange Corporation,* 18 Del. Ch. 287, 159 A. 432, and *Belle Isle Corporation v. Mac Bean,* 29 Del. Ch. 261, 49 A. (2d) 5. And this same line of reasoning tends to refute the contention that the corporation ratified the contracts when the stockholders in their meetings of 1956 and 1957 approved all lawful acts of the board for the preceding year. Additionally, ratification can never exist unless it is clearly shown that the party charged with ratification has full knowledge of all material facts, and thereafter knowingly accepts and approves the contract. * * * "

3. THE QUESTION OF NEWLY DISCOVERED EVIDENCE.

Hudson argues that his motion for a new trial on the ground of newly discovered evidence should have been granted. In the affidavit filed in support of his motion Hudson stated that he had discovered evidence that would establish acceptance of the 8,000 shares of stock donated by four officers and directors in full accord and satisfaction of any claim arising out of the Texas Adams Oil Company stock transaction. In support of this claim the affidavit stated that such evidence consisted of entries on a bookkeeping sheet entitled "American Founders Life Insurance Co. Adjusting Journal Entries 4/30/57" which allegedly was produced by the chief accountant of plaintiff corporation in the trial of another case. No copy of this allegedly important document was attached to the motion for new trial nor to the affidavit. Plaintiff corporation filed a counter affidavit

which, as an exhibit, set forth a copy of the alleged bookkeeping sheet referred to in Hudson's affidavit and alleged that such entries were merely corroborative of the testimony and evidence produced at the trial of the cause, and did not establish nor in any way tend to establish the alleged defense of accord and satisfaction. A review of the document itself as set forth in the second supplemental record merely discloses adjusting journal entries "to record relinquishment of stock options." Said document obviously has no relevancy to any acceptance of the so-called "donation" of 8,000 shares in full satisfaction of any claim against Hudson or the other donors. It is merely corroborative and cumulative of the fact that there was a paper transaction of record by which 8,000 shares of unpaid-for stock was transferred to plaintiff corporation and a proper proportionate amount of the donors' notes were cancelled.

In *Howard v. International Trust Company,* 139 Colo. 314, 338 P. (2d) 689, at page 324 of the official report, this Court said: "* * * The granting or denial of a motion for a new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court, and in the absence of an abuse of that discretion will not be disturbed * * *."

To the same effect see *Buchanan v. Burgess,* 99 Colo. 307, 62 P. (2d) 465; *Andrews v. Costilla Ditch Company,* 114 Colo. 317, 165 P. (2d) 188; *Barsch v. Hammond,* 110 Colo. 441, 135 P. (2d) 519.

We also have held that a trial court should deny a motion for new trial on the ground of newly discovered evidence when such alleged evidence would be only cumulative and would not change the result. *Andrews v. Costilla Ditch Company,* supra; *Schlessman v. Brainard,* 104 Colo. 514, 92 P. (2d) 749; *Colorado Springs and Interurban Railway Company v. Fogelsong,* 42 Colo. 341, 94 Pac. 356.

One other point on which we briefly comment is

the assertion that the record before this Court is uncertain and inadequate. This was asserted to be the result of the death of the reporter and because of the difficulties of transcription encountered by those who sought to decipher his notes. We are cited no authority, and we know of none supporting the assertion that a plaintiff in error is entitled to reversal and a new trial on the ground that the record in the case is "uncertain."

The record indicates that the trial court, after lengthy and prolonged hearings and objections filed by Hudson and by plaintiff corporation, executed its written order providing for certain changes in the reporter's transcript, and thereafter ordered that the transcript as corrected be allowed, approved, settled, signed and sealed as the reporter's transcript in the action. Under rule 112 (f) R.C.P., which provides that the transcript be certified by the judge, such certification to the transcript of the proceedings is final, particularly where the objectors during the hearing on their objections produced no evidence or sworn testimony contradicting any portion of the transcript as finally certified and approved by the trial judge.

The law regarding the effect of the certificaton of the transcript by a trial judge is adequately set forth in *Gildehaus v. Jones,* 356 Mo. 8, 200 S.W. (2d) 523, wherein the Supreme Court of Missouri said: "We hold the transcript of the record as originally prepared by the reporter which is authenticated by a certificate signed by the trial judge, and transmitted to this Court under the seal of the clerk of the trial court, is to be considered true and quite as if the parties had agreed to it. * * * The trial judge's authentication of the full transcript of the record, like a trial judge's settlement of the former bill of exceptions, which settlement was tantamount to the approval of the bill, should be considered the act of the trial judge as a judge and in the exercise of a judicial power, his action to be dependent on his memory and existing aids. In the authentication of the

full transcript, the trial judge acts under the solemnity of his official oath, and we will presume he has faithfully and honestly performed his duty."

To the same effect see *Madison v. Montgomery*, 206 Ga. 199, 56 S. E. (2d) 292; *New Bay Shore Corporation v. Lewis*, 193 Va. 400, 69 S. E. (2d) 320.

We have carefully considered other contentions and arguments advanced and find them without merit. The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE FRANTZ concur.