No. 12,007.

CITY OF FORT COLLINS *v.* SMITH.

Decided October 29, 1928. Rehearing denied November 26, 1928.

512

Mr. Neil F. Graham, Mr. Fred W. Stover, for plaintiff in error.

Mr. Fancher Sarchet, Mr. J. Emery Chilton, for defendant in error.

*En Banc.*

Mr. Chief Justice Denison delivered the opinion of the court.

Mrs. Smith had a verdict and judgment against the city of Fort Collins in an action brought by her for per-

sonal injuries which she suffered in a collision between an engine operated by the Colorado and Southern Railway Company and a street car in which she was riding which was operated by the city. The city brings error. We think the judgment must be affirmed.

1. The city's first point for reversal is that the evidence does not show negligence in the operation of the street railway. We think that the testimony of the engineer of the engine, if believed, is sufficient on this point and we must assume that it was believed. The fact that it was strongly disputed cannot concern us.

2. The city's next point is that evidence was admitted in rebuttal which should have been in chief. Such matter is in the discretion of the court.

3. The city requested and the court refused an instruction, "that in this case there is no claim made for medical or nursing expenses, either past or future, the city having paid all expenses up to the time of the commencement of this suit, and none is claimed for expenditures thereafter." The instruction was not true, because plaintiff did claim compensation for future expenses and therefore the whole instruction was rightly refused. The court was not required to correct it. *Allen v. Shires,* 47 Colo. 433, 438, 107 Pac. 1070.

4. The defendant requested an instruction that the jury might consider an order of the C. & S. Ry. Company which restricted trains to four miles per hour at the place of the accident and might consider whether the motorman might not have been justified in relying on that order and so assuming that the engine was moving not to exceed such rate; but there was no evidence that the motorman relied on the order or that he knew it.

5. Defendant requested and the court refused an instruction that it was the duty of the engineer to observe the condition at the crossing and give warning. This was not relevant to any evidence. There was no evidence that the motorman was misled by any lack of warning, or that the engineer did not observe.

6. The court refused an instruction, No. 10, which was in effect that if the accident was caused by the sole negligence of the C. & S. Ry. Company, the verdict should be for defendant. This is, of course, the law but the same instruction in other words was given elsewhere.

7. The court refused the defendant's requested instruction, No. 12, which contained the statement that the jury might, together with the mortality tables, consider their own common knowledge of the uncertainty of life. This was well enough, but was in substance covered by instruction No. 10 given by the court, which told the jury that they might consider the mortality tables, which were not binding upon them, "but as assisting you, together with all other evidence as to health, habits and occupation, in fixing her probable expectancy." There can be no doubt that the jury understood that they were to use their common knowledge of life's uncertainty. Indeed there is no way in which they could follow this instruction without doing so.

8. Defendant objects to instruction No. 10 because in directing the jury as to measure of damages it does not cover the common uncertainty of life as requested by defendant. The answer is the same as in the preceding paragraph hereof. The only way in which the jury or anyone else can make use of common knowledge of the uncertainty of life is by applying it to the evidence of the health, habits, occupation, etc., of the subject of their consideration. Then, too, the common uncertainty of life has been taken into account in determining the tables, which are based on the averages of actual lives that have been lived.

9. It is claimed that instruction No. 10, on measure of damages, is defective in that it does not limit the claims to the bill of particulars or even the evidence, but, so far as the evidence is concerned instruction No. 11 covers the point and as to the bill of particulars there was nothing in the evidence concerning damages that was not specified in that bill, a restriction to the evidence,

therefore, was logically a restriction to the bill. No prejudice could have resulted.

10. It is claimed that the amount of the verdict, $11,800, shows passion and prejudice and is excessive. We cannot say so. If the jury believed the evidence most favorable to plaintiff we must presume that she will, perhaps for the rest of her life, be subject to much severe pain, have a withered leg, be unable to walk without crutches except slowly and with difficulty and must wear surgeon's tape, changed frequently. The jury might have given her more without compelling us to say that they were influenced by passion or prejudice. To compare this verdict with old ones in other cases is misleading; $8,000 a few years ago would be more than $12,000 today.

It is claimed that the pain in the sciatic nerve was not shown by any evidence to have been the result of the injury, but there was some evidence of it, especially in the testimony of Dr. Cram, and there was no evidence that it was caused by anything else.

11. The defendant claims that it has newly discovered evidence which required the court to grant a new trial, and this is the only question in the case which gives us great concern. We find that we cannot disturb the conclusion of the district court on the point. The purport of the new evidence is: 1. That the plaintiff was able to walk about freely and did so when off her guard, which, it is claimed, would show that her injuries are sham, or largely so. 2. That she offered pay to a witness who knew of this to conceal it.

The first class of this evidence is cumulative. The defendant introduced the same kind of evidence at the trial, moreover, that part of this evidence which is strongest, if true, was considerably discredited. We cannot say that it would probably cause a different result at a new trial. The second class is more serious, but it is but one witness, a former servant in plaintiff's family, who makes affidavit that plaintiff offered her pay to keep still about

what she asserts to be a fact, that plaintiff walked about the house easily, when nobody was looking, a most serious charge. The affidavit of this witness, however, is contradicted by a number of counter-affidavits as to the condition of plaintiff and it is obvious that this amounts to a contradiction of the offer to pay. These counter-affiants would no doubt testify at a new trial and the likelihood of a change of result under such circumstances is at least not strong. *Specie Payment Co. v. Kirk*, 56 Colo. 275, 139 Pac. 21.

Judgment affirmed.

MR. JUSTICE CAMPBELL dissents.