No. 15,429.

ANDREWS *v.* COSTILLA DITCH COMPANY.
(165 P. [2d] 188)

Decided November 26, 1945. Rehearing denied January 21, 1946.

Mr. MERLE M. MARSHALL, for plaintiff in error.

318

Mr. GEORGE M. CORLETT, Mr. CHARLES R. CORLETT, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, plaintiff below, to whom we here-inafter refer as such, brought an action in damages against defendant in error, a ditch company, for negligently permitting its waste water to overflow lands and destroy his hay crop in the fall of 1941. Trial was to a jury which returned a verdict in favor of the ditch company, judgment was entered accordingly, and plaintiff seeks reversal on a writ of error.

The ditch company operates a mutual ditch about fifteen miles long, which diverts water from the Rio Grande river about half way between Alamosa and Monte Vista in the San Luis Valley. For about two miles it runs parallel to plaintiff's land, a mile to the west. Plaintiff, the last user on the ditch, operates a hay and pasture ranch of about 5,000 acres, a part of which was the land, the hay upon which he alleged was damaged by defendant's waste water. While there is considerable divergence in plaintiff's testimony as to damages, defendant makes no particular issue on that point, but as a defense relies upon an alleged contract with the plaintiff to take care of the overflow.

In the fall of 1920, members of the Bagwell and Sowards families granted defendant company the right to dump the overflow water into a slough at the northwest quarter of section 28, township 37, range 11, a mile west of part of the land alleged to have been flooded, and they agreed to take care of the water from that point. This written agreement was introduced in evidence as defendant's exhibit D. During the 1920's the defendant company constructed a tail ditch to take care of the

water along the west or upper side of land owned by plaintiff and prior to the time of his purchase of the land herein involved. This ditch proved to be difficult to maintain, and it was at about the same time, according to defendant's testimony, that plaintiff agreed to build a new ditch for a hundred and thirty-five dollars to take care of the overflow, provided he could have the use of the water, claiming that, as a stockholder, he should be given preference over the Bagwell and Sowards families.

Prior to 1925 one Hansen owned the lands on which plaintiff claims the damage in this case occurred. In 1925 Hansen obtained a loan on the land from the Denver Joint Stock Land Bank of Denver, said loan being secured by a deed of trust which was later foreclosed, and in December, 1940, plaintiff purchased the land on contract from said bank. Meanwhile, Hansen had given defendant company an "easement" deed (defendant's exhibit B), by the terms of which permission was granted to dump the waste water on the Hansen land. In 1929, Etta K. Andrews, the then wife of plaintiff, executed a right-of-way quitclaim deed (defendant's exhibit C) to defendant company for a ditch running east along the north line of section 21. Plaintiff constructed a ditch on this right-of-way to replace the old one leading down to the Bagwell and Sowards land so as to make use of the waste water, in agreement for which defendant company alleges plaintiff, as part of his contract, promised to obtain a cancellation of the contract between defendant company and Bagwell and Sowards, and secure exhibit B for the company. Exhibit B was obtained as noted, supra, but was not recorded until May 19, 1942. Exhibit C was recorded April 15, 1929, and exhibit D on November 24, 1920.

In 1928 plaintiff was elected a member of the board of directors of defendant company, and in 1930 he became its president.

Plaintiff denies any agreement whereby he was to

take care of the overflow water, and states that he had nothing to do with exhibits B, C and D. He alleges that he was paid a hundred and thirty-five dollars for working on a ditch which was to be used in connection with another irrigation project.

In seeking reversal of the judgment, plaintiff specifies the point that the court erred in overruling his motion for a new trial, which motion was based upon the following grounds: 1. Improper admission of exhibits C and D, and the action of the court permitting counsel for defendant to interrogate witnesses in relation to exhibit B, and make statements to the jury concerning the latter when the exhibit was ultimately excluded from the evidence. 2. Insufficiency of the evidence, and 3. Newly discovered evidence.

1. Plaintiff's contention concerning the impropriety of the admission of the exhibits is that, at the time that Hansen gave the deed of trust on the land to the Denver bank, it was free from the burden of the alleged easement resulting from exhibit B, and that when plaintiff purchased the land from the bank in 1940, he was a bona fide purchaser without notice of any burden which may have become attached to the land subsequent to the giving of the deed of trust in 1925. In ultimately excluding exhibit B, the court, as likewise did plaintiff's counsel in objecting to the court's admission of exhibits C and D, misapprehend the purpose of these exhibits.

As already noted the company is relying upon its oral contract, and plaintiff denies any such contract. Where the existence of an alleged oral contract is the main issue involved in a case, as here, and "the making of the oral contract is disputed, all the acts and declarations of the parties tending to establish or refute it are admissible, together with all the facts connected with the history of the transaction, and the surrounding circumstances; * * * " *Holly Sugar Co. v. Drain,* 73 Colo. 48, 213 Pac. 119, quoting from 13 C.J. 767. The obtain-

ing of exhibits B, C, and D tends strongly to establish the oral contract upon which defendant relies. See, also, 20 Am. Jur. 791; 17 C.J.S. 1238.

2. We think the evidence abundantly supports the verdict and judgment. Plaintiff admits that he wanted the waste water from the Costilla ditch; that he had filed on it, and that he had used it for many years; that he did not complain until 1941 when, "they gave me a double dose and I refused to stand for it." Wilson, secretary of the board of defendant company, testified that the plaintiff came to him in 1930 after he, plaintiff, had constructed the ditch, and wanted his money, that he, Wilson, told plaintiff that the ditch was too small, whereupon plaintiff replied: "* * * If it isn't big enough I am here to make it big enough * * * Why do they kick on paying me this money when I guaranteed to take care of this water?" Five witnesses for defendant testified that plaintiff did obtain a cancellation of exhibit D and that he did receive exhibit B from Hansen. Plaintiff admitted that he built a "ditch about 200 yards long to keep the water off the meadow at the Sherwood house [the Sherwood house being on a meadow owned by plaintiff, but not on the land here involved] * * * for a couple of months," and when plaintiff was asked: "So then it is just a question here of whether they are telling the truth or you are?", he answered: "If that is the way you want to put it, yes, * * *."

Defendant's exhibit A-1, which the secretary of the board says plaintiff handed to him, reads as follows: "Alamosa, Colo. Nov. 8, 1930. The Costilla Ditch Company, to Wm. W. Andrews, Dr.—Labor on waste ditch for Costilla Ditch Company in Section 21, Township 37, Range 11, as per contract with Board of Directors. To construction on one mile of new ditch . . . $135. Balance due on old account $18.05." The $18.05 was paid separately, and as to the $135 there is a check for that amount marked "paid," to which is attached a voucher

that bears the notation, "For work on waste ditch in 1930," and which cleared the bank in the usual course and bears plaintiff's signature. Plaintiff attempted to show that this hundred and thirty-five dollars was for another account which appeared on his own books, but that account (plaintiff's exhibit 5) is not in the record; however, the jury heard the testimony concerning it.

We believe the conclusion inescapable, that the only purpose plaintiff would have in making "a thorough test" of the Bagwell ditch in 1930, would be to determine the size of the ditch he was to construct for the Costilla Ditch Company, and for which he billed the company in that year, all in accordance with the contract that the members of the board of directors said they had with him.

■ ■ 3. The alleged newly discovered evidence, upon which plaintiff relies in his motion for a new trial, is a certificate of purchase issued by the State Board of Land Commissioners of Colorado to Etta K. Andrews dated May 7, 1924, covering the northwest quarter of section 21-37-11 in Alamosa county, which he says is the same land as that described in defendant's exhibit B (it is exhibit C and counsel corrects this error in his brief, i.e., the so-called easement deed from Etta K. Andrews) which shows on its face that it was assigned by the said Etta K. Andrews on October 17, 1925, whereas her so-called easement deed (exhibit C) bears date of April 10, 1929 (acknowledged April 12, 1929), when she no longer had any right, title or interest in said property. However, plaintiff is the assignee of the certificate of purchase, and exhibit C recites, in part: "This quitclaim deed is given subject to the rights and interests reserved by the State of Colorado." This would put him on notice of whatever interest the state had, and, the certificate being a matter of public record, he had presumptive knowledge of it. Under such circumstances the so-called new evidence will not warrant the granting of a new trial. *Greenlees*

*v. Chezik*, 68 Colo. 521, 190 Pac. 667. Plaintiff also testified that he owned the north half of section 21, and offered to give the right-of-way covered by exhibit C for one further south. The certificate of purchase offered in evidence shows him as the assignee, so it would be merely cumulative in any event, and furnished no ground for a new trial. *Greenlees v. Chezik, supra; Fort Collins v. Smith*, 84 Colo. 511, 272 Pac. 6.

A new trial will not be granted where the likelihood of a different result is "at least not strong." *Fort Collins v. Smith, supra.*

No error was committed by overruling the motion for a new trial. The cause was fully submitted to the jury under instructions not challenged.

The judgment is affirmed.

Mr. Justice Knous concurs in the result.

Mr. Justice Hilliard dissents.