**Edward M. NEWBURGH, Plaintiff,**

v.

**FLORSHEIM SHOE COMPANY**

and

**International Shoe Company, Defendants.**

**Civ. A. No. 59-240.**

United States District Court
D. Massachusetts.
Dec. 29, 1961.

DiMento & Sullivan, James J. Sullivan, Jr., Boston, Mass., for plaintiff.

Charles F. Choate, Gordon K. Bell, Henry G. Weaver, Jr., Choate, Hall & Stewart, Boston, Mass., for defendants.

CAFFREY, District Judge.

This is an action in contract by the plaintiff, a resident of Massachusetts, against the Florsheim Shoe Company, a corporation organized under the laws of the State of Illinois, to recover certain commissions the plaintiff alleges are owed to him under the terms of an oral employment agreement between these

two parties. The suit was commenced by writ dated February 9, 1959, returnable to the Superior Court for Suffolk County, Commonwealth of Massachusetts. The action was thereafter removed by the defendants to this Court, with jurisdiction based upon diversity of citizenship of the parties. The International Shoe Company is joined as a party-defendant due to the fact that it acquired all the capital stock of Florsheim Shoe Company in November 1956 and thereafter continued to operate Florsheim as a division of International. International has stipulated that it will pay any liability to the plaintiff which is found to be owing to him by Florsheim.

The evidence showed that during the period 1940 to 1948 the plaintiff, as a shoe jobber, purchased quantities of shoe leather products from Florsheim. On or about October 1, 1948, however, the plaintiff and Florsheim, through its representative, Edward Meltzer, entered into an arrangement by which the plaintiff ceased purchasing shoe leather products from Florsheim for his own account and agreed to procure business and customers for Florsheim as a commission salesman. Under this arrangement Meltzer agreed that the plaintiff would be paid a commission of 3 per cent of the gross purchase price of all leather insoles and outsoles purchased by customers that plaintiff had procured. As part of the oral agreement, every customer obtained by plaintiff had to be approved by Florsheim's credit department.

Meltzer further agreed that Florsheim would maintain books and furnish the plaintiff with duplicate invoices showing the quantity and cost of all purchases made under the new arrangement. Although it is not clear from the evidence whether the parties actually agreed that the plaintiff would be paid commissions on future sales even though he did not service the accounts of the customers, the fact that Florsheim thereafter did pay commissions on sales which the plaintiff did not actually service indicates that the parties so understood their arrangement. No time period was specified as to this arrangement and, in making it, the parties did not discuss how termination would be made or whether commissions would be paid on sales made after termination.

Thereafter, the plaintiff obtained an order for sole leather from the Koss Shoe Company, a Maine corporation. This order was approved by Florsheim's Credit Department and the sale was completed. After this initial sale Florsheim made sales of both insoles and outsoles to the Koss Shoe Company and paid plaintiff a commission of 3 per cent on all such sales up until April 1954. In most instances, sales to Koss were made and negotiations therefor were conducted directly with Koss by Meltzer without any action by plaintiff.

In April 1954, Joseph Koss, President of Koss Shoe Company, indicated to Meltzer that he was not willing to pay the price which Florsheim was asking for a particular lot of insoles. The testimony of both Meltzer and Koss indicates that Meltzer told Koss that in order to secure the sale he, Meltzer, would inquire of plaintiff and see if plaintiff would waive his commission. Meltzer then discussed the matter with the plaintiff and it is uncontroverted that plaintiff did agree to make a waiver. However, the parties are in dispute over the question of whether the plaintiff waived his commission as to all future orders from Koss for insoles or for that one order only. Meltzer testified that the plaintiff agreed to waive all future commissions on the sale of insoles to Koss "provided we would take care of him on the outsoles." The plaintiff testified "I will waive the commission on this particular order."

Before considering the question of waiver, the defendant's contention that there was no enforceable contract between the parties must first be considered. Defendant relies on Restatement of Contracts, Sec. 79, Bartlett v. Keith, 325 Mass. 265, 90 N.E.2d 308, and Bernstein v. W. B. Mfg. Co., 238 Mass. 589, 131 N.E. 200, as supporting his argument that the contract was void at its inception for the reason that "Newburgh

promised nothing" and, therefore, there is no consideration to support Florsheim's alleged promise.

■■ There are several answers to this contention. One is that in determining whether or not there was a contract, the conduct of the parties with reference to the alleged contract may be considered. I find that defendant paid plaintiff 3 per cent commissions from 1948 to 1958, and that in Exhibit A offered by defendant defendant concedes its liability to plaintiff in the amount of $5928.24 for 3 per cent commission on defendant's sales of outsoles to Koss between November 1956 and December 1958. The letter from defendant by Meltzer, to plaintiff, dated December 12, 1958, formally terminating the relations between plaintiff and defendant concedes that plaintiff represented defendant "very well for the past ten years" and refers to "an item of accrued commissions due you." It is not clear just what defendant's theory is as to the basis of its liability to plaintiff for the items it conceded were "due" to plaintiff if there was no valid contract between them. Suffice it to say that defendant's contention that there is no valid contract is without merit. I find and rule that a valid oral contract was made in September of 1958, under which defendant agreed to pay plaintiff a 3 per cent commission on future sales by defendant of outsoles or insoles to any new customers located in New England procured as customers of defendant by plaintiff. I find that the contract did not require plaintiff to "service" these customers and that this contract was terminable at will. Substantially similar contracts have been held valid in Emerson v. Ackerman, 233 Mass. 249, 124 N.E. 17, and Globe Paper Co., Inc. v. Russell Box Co., 291 Mass. 1, 9, 195 N.E. 710.

■■ In evaluating the conflicting testimony in this case as the trier of fact, I must consider, *inter alia*, the extent to which witnesses are either corroborated or contradicted by documentary evidence and their demeanor on the witness stand, and draw reasonable inferences therefrom. The plaintiff displayed belligerence and rudeness, and was argumentative and unruly. His truculent attitude did nothing to advance his cause or enhance his credibility. Exhibit 3 of Defendant's Exhibit A indicates that after April 13, 1954 Florsheim sold $89,176.80 worth of insoles to Koss, on which a 3 per cent commission would be $2675.30. On the other hand, Exhibit 6 of Defendant's Exhibit A shows that from November 1, 1956 to December 15, 1958, Florsheim sold $197,661.50 worth of outsoles to Koss, on which the 3 per cent commission (conceded by defendant to be due to plaintiff) figured out to $5928.24.

■ Having in mind plaintiff's attitude on the witness stand, I believe Meltzer's testimony that plaintiff waived the low commission on insoles to protect his right to collect the larger $5928.24 commission on outsoles. In so finding I have in mind that the plaintiff was experienced in this trade, knew the relative volume of insole and outsole sales to Koss, and, most importantly, knew that he had a contract terminable at will which could be cut off at any time by Florsheim. I do not believe that plaintiff waived only on the one sale and I find that, as testified by Meltzer, he waived on insole sales to Koss after April of 1954 to protect his right to continue to receive commissions on outsole sales to Koss thereafter.

The balance of plaintiff's claim relates to commissions alleged to be due by reason of sales by defendant to the William F. Reddish Leather Company. Defendant claims plaintiff is barred by an account allegedly stated between the parties.[1] Regarding this defense raised by Florsheim that it was discharged of all liability because of an alleged Account Stated, suffice it to say that cases in Massachusetts indicate that although a creditor may bring an action against his debtor on an implied promise of the

---

1. Defendant argues that its letter of Dec. 12 and plaintiff's letter of Dec. 16, 1958 (Ex. 3, 4) constitute an account stated.

debtor, after they have settled the debt, this does not discharge the old debt or bar an action on it by the creditor in the absence of an express promise by the creditor. In Buxton v. Edwards, 134 Mass. 567, 578 (1883), the Court said:

"An accounting together is not the creation of a new debt. It is a new statement and acknowledgment of an old debt, from which a promise to pay is implied sufficient to maintain an action, but not to discharge the old debt, or bar an action upon it in its original form. There may be an express promise, which will supersede that which is implied, and which will discharge the original debt."

This language is recited in Rizkalla v. Abusamra, 284 Mass. 303, 307, 187 N.E. 602 (1933).

It has also been held that an Account Stated "may be impeached for a mistake of fact or of law, and that it concludes nothing as to items not embraced within the stipulation." Colton Elastic Web Co. v. White, 23 F.Supp. 761, 762 (D.Mass.1938).

The defendant has raised the statute of limitations in its answer and has also argued in its brief that plaintiff cannot recover commissions on sales made by defendant to the William F. Reddish Leather Company after a date in 1951, because thereafter, due to a change in ownership and management, the Reddish Leather Company was, in effect, a new account not procured by plaintiff. The sales by defendant to or for the account of William F. Reddish Leather Company involved complex credit arrangements which resulted in the invoicing of all goods sold to Proctor-Ellison Company, which, in turn, had two different methods of making the leather available to and receiving payment from the Reddish Company. Because I am of the opinion that the statute of limitations defense raised in defendant's answer is valid, I will not further analyze the question of whether or not the Reddish Company became a new account when operations of that company were resumed after a nine-month shutdown, caused by financial difficulties, in 1952, at which time a new ownership took over the capital stock of the corporation and Paul Reddish succeeded his brother, Leo Reddish, as the chief executive officer thereof, and, in turn, made new credit arrangements with Proctor-Ellison Company.

The plaintiff testified that he did not know, and was totally unaware of the fact that defendant was continuing to sell to the Reddish Company through Proctor-Ellison until October 1958. I do not believe him. I believe Leo Reddish, who testified that he advised plaintiff about the new and resumed operations of the Reddish Company in November 1951. I believe him because he appears to be disinterested and impressed me as a credible witness, and because he was, to some extent, corroborated by Meltzer, who testified that he had advised the plaintiff on several occasions prior to 1956, one of which Meltzer believed to be in 1951, to the effect that the plaintiff would receive no further commissions on the Reddish account.

I also believe that the plaintiff knew of the continuing transactions with the Reddish Company because he was in regular contact with Florsheim all through this period and was receiving 3 per cent commissions on other accounts throughout the entire period. There was evidence that he was in regular contact with people in the trade; Reddish Company is located in Boston; and the plaintiff himself testified "There is no customer on the Florsheim books that existed that I did not know." Coupling the affirmative testimony of Leo Reddish and Meltzer with the above-enumerated factors, and the fact that Exhibit 1 of Defendant's Exhibit A indicates that sales to the Reddish Company on which plaintiff was paid no commission from 1951 through 1956 total $503,370.00 on which a 3 per cent commission would be $15,101.00, I find it absolutely incredible that one who appeared on the witness stand as a shrewd, experienced businessman, did not know or make any inquiry

about the resumption of one of his principal accounts until six years later. It is far more reasonable to infer that although plaintiff was aware of the resumption of Florsheim's business with the Reddish Company, he believed his financial interests would best be served not to litigate Meltzer's refusal to pay him a commission on this account and thereby jeopardize all his other income from Florsheim under this terminable contract. Once Florsheim terminated the contract there was no longer any danger of rocking his economic boat by litigating this Reddish account and he promptly brought suit, in less than two months from the date of termination of the contract.

■ Although the defendant did not base any of its specific arguments on the statute of limitations defense, it was included as a defense in the answer to plaintiff's declaration, and, as such, it must still be considered in determining the rights of the parties. Under Massachusetts G.L. c. 260, Sec. 2, controlling here, actions in contract must be commenced within six years after the cause of action first accrues.

■ The burden of proof on this issue rests on the plaintiff. Though the statute of limitations must be set up in answer, it is not an affirmative defense, and when it is pleaded the burden is on the plaintiff to prove that his action was commenced within the time limited by the statute. See Breen v. Burns, 280 Mass. 222, 182 N.E. 294 (1932); Mendes v. Roche, 317 Mass. 321, 58 N.E.2d 148 (1944); and Smith v. Pasqualetto, 146 F.Supp. 680 (D.Mass.), vacated on other grounds 246 F.2d 765 (1 Cir., 1957).

■ Since plaintiff had separate rights as to each customer he procured, the account of each customer is distinct in itself and can only be considered separately. The general accountings which plaintiff received from Florsheim covering his commissions are similar to statements of earnings. They do not constitute an open account between the parties which would suspend the statute of limitations as to accounts not reflected in the accountings. Harding v. Covell, 217 Mass. 120, 104 N.E. 452 (1914); Houghton v. Keveney, 230 Mass. 49, 53, 119 N.E. 447 (1918); cf. Bass v. Bass, 8 Pick. 187, 25 Mass. 187 (1829).

■ The plaintiff here is suing for an alleged breach of contract by Florsheim. The statute of limitations begins to run against a right of action based on a breach of contract from the time of the breach. Boston Towboat Co. v. Medford National Bank, 232 Mass. 38, 121 N.E. 491 (1919); Perkins v. Whelan, 116 Mass. 542 (1875). It has been held in this Circuit that "a cause of action accrues from the very first moment that the right to institute court action arises." Delman v. Federal Products Corp., 136 F.Supp. 241, 244 (D.R.I.), affirmed 251 F.2d 123, 128 (1 Cir., 1958). In affirming the decision of the District Court, the Court of Appeals said:

> "The only way open to the plaintiff to avoid the bar of that statute is by introducing convincing evidence * * * that the defendant's conduct made its reliance on the defense of the statute inequitable or contrary to general principles of good conduct and fair dealing. The plaintiff had ample opportunity to present such evidence."

There is no evidence here that the defendant's conduct was such that it cannot plead the limitations defense.

Plaintiff's cause of action accrued when Florsheim first breached the contract by failing to pay plaintiff a commission on the May 1951 sale, and if not then, it certainly accrued when Florsheim denied any liability to plaintiff to pay commissions on the sales which resumed in June, 1952.

■ On the basis of the foregoing I find that plaintiff's claim to commission on the Reddish account is barred by the Massachusetts six-year statute of limitations. I might observe that the hazy memories exhibited on the witness stand in this case underscore the wisdom of the policy expressed by the statute of

limitations which was, and is, to foster justice by protecting parties against the uncertainty of defending against stale claims at a time many years later when witnesses and documents may have become unavailable, and vague and uncertain testimony is foisted upon the trier of facts. The instant case is a classic example of a plaintiff's having an action available to him many years ago who elected to forego his right to litigate as long as he continued to enjoy other fruits from the Florsheim shoe tree.

Judgment for the plaintiff in the amount of $5,928.24, with interest from December 15, 1958.