**WHEATLAND IRRIGATION DISTRICT,**
Appellant (Defendant below),

v.

George DODGE, Appellee (Plaintiff below).

No. 3174.

Supreme Court of Wyoming.

Dec. 19, 1963.

Jones & Jones, William R. Jones, Wheatland, for appellant.

G. R. McConnell and Walter Scott, Laramie, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiff, George Dodge, in his complaint alleged that he was the owner of certain lands in Albany County and of stored water in what is generally known as Wheatland Reservoir and that he and John Tyler Dodge, his grandfather and predecessor in interest, had been in exclusive possession and enjoyment of such water since approximately May 1909; that it was granted to said predecessor pursuant to a contract with defendant's predecessor in interest, the Wyoming Development Company, in payment for damage caused by overflow from the reservoir; that the water had been put to beneficial use on certain portions of plaintiff's land; and that defendant was making claims adverse to plaintiff. It was prayed that title be quieted in plaintiff, that defendant be enjoined from interfering with plaintiff's use of the water, and that damages be awarded. Defendant denied generally; pleaded that it was a bona fide purchaser for value without notice, that the land described by plaintiff had been patented from the United States subject to vested and accrued rights concerning water, ditches, and reservoirs, and that defendant had used the reservoir and its facilities as it related to plaintiff's land adversely for many years; and counterclaimed for damages occasioned by plaintiff's use of the water. Following the trial to a court without a jury, judgment was entered granting Dodge a perpetual water right for the irrigation of 170 acres of land and requiring the defendant to give Dodge written notice of not less than ten days prior to any date on which it intended to divert storage water from Reservoir 2 into the Laramie River. Defendant has appealed, urging that the judgment is contrary to the law and the evidence.

Although Dodge might under his pleadings have presented evidence of a prescriptive right to the water which he claimed to have used on Sec. 34, T. 23 N., R. 73 W., we find no testimony which could reasonably be construed as showing that the water was used without the consent of defendant or its predecessors. In fact, the evidence is to the contrary, and plaintiff in this court does not seem to rely upon any prescriptive right except peripherally. Moreover, the trial court stated as a conclusion of law that it did not pass upon the right to acquire title to storage water by prescription, and since this is not challenged, it is unnecessary to discuss the subject.

The cause accordingly turns upon the correctness of the court's judgment that "the oral agreement made in 1909, between the predecessors in interest of Dodge and the Defendant, coupled with the interpretation placed upon it, as shown by the conduct of the parties with respect to the use of storage water and the use of the spillway by the Defendant without objection, since 1909, shows such performance and recognition as to make it a valid and binding agreement of the parties."

The grandmother of plaintiff, Mary E. Dodge, owned the NE¼, S½NW¼, and N½SW¼, Sec. 34, T. 23 N., R. 73 W., Albany County, having received a patent from the United States on July 20, 1911; the grandfather of plaintiff, John T. Dodge, owned the SE¼ of the said section, having received a patent from the United States on May 27, 1912. In both instances, the land had been transferred by mesne conveyances to plaintiff. The mentioned section was north of Wheatland Reservoir 2 and was traversed by a channel leading from the spillway constructed by interested persons and volunteers in 1909 when there occurred a crisis wherein the reservoir was threatened by overflow.

The only evidence concerning the agreement between the owners of the reservoir

and John T. Dodge was the testimony of plaintiff's father, Thomas B. Dodge, who was eighty-five years old at the time his deposition was taken. He testified that his mother and father lived on the Laramie River on Sec. 34, T. 23 N., R. 73 W., Albany County, a little over a mile north of the lake when the reservoir was full. According to him the reservoir had been constructed around 1900; the first time the water flowed from it down a gully north to the Laramie River was in June 1909. After the crisis of the rising water and the washing that took place below the reservoir, there was a considerable channel, as much as twenty feet deep in places, and varying from fifty to sixty feet to two hundred yards in width. He was present when his father talked with Judge Carey, the head of the Wyoming Development Company. The three walked from the spillway down to the river, looked the situation over pretty thoroughly and Carey said, " 'Well, Mr. Dodge, we have done you considerable damage and we want to make it right. Now, we will put you in a flume here and maintain it and when the Wheatland Development Company is running water, you can run water in your little ditches too. Your ditches are small; your meadows are narrow and rather steep; the ground is gravelled.' 'Therefore,' * * * 'there would be very little waste of water.' " John T. Dodge was well pleased with this arrangement. The witness stated that whenever water goes down the spillway ditch, debris is brought over onto the meadows.

Plaintiff himself did not purport to know anything about the agreement, but testified at some length concerning the property and the use of the water. He was born in 1908, had lived near the property as a child, and recalled that his grandfather had always used the reservoir water on Sec. 34 from 1912 or 1913, his earliest remembrance. He had lived on Sec. 34 since 1930, and the record indicated that he had received title to all of the section except the S½SW¼ at that time. The defendant had on occasion used rock from Dodge's quarry, and its representative had offered to pay him what the rock was worth, but plaintiff indicated that as long as he was furnished storage water that would settle the rock bill. Although since 1930 the spillway had been used only three times, the damage to his property continued, largely because of the snow and rain washing down the banks of the spillway ditch. Material is washed in on plaintiff's land but more seriously his irrigation ditch fills and in one instance when the spillway was used the irrigation ditch and ditch bank were washed out. Since 1930 Dodge had never been denied water and had irrigated approximately 170 acres although in the years 1934 and 1954 there had been no storage water available. His first dealings were with Joe Elliot, the manager of defendant's predecessors, and later with John Whiteing, defendant's superintendent for seven years from 1945 to 1952. He had never used the water secretly but said that he had told Elliot and the Wheatland Irrigation District more than ten years prior to the trial that he had a right to it. In 1958 he was informed that he would not be permitted to use the storage water. He met with members of the board to discuss the possibility of his getting further water and was told that they would let him know if he could use it another week, that meanwhile they wanted to go into the matter further and discuss it. He did not hear from any representative of the company and did not have water that year or thereafter. Members of the board with whom he discussed the matter of his claim were Messrs. Gudahl, Graefe, and Page. Previously, and more than ten years before the trial, he had talked with Members Goodrich, Gudahl, Bridgman, Short, and Zoner, as well as with Mr. Elliot. Gudahl was a member of the board both at the earlier meeting and at the one in 1958.

John Whiteing said that among other duties he had done hydrographic work on the Laramie River in the vicinity of plaintiff's ranch and had been in charge of managing and distributing the water of the

Wheatland Irrigation District. At the time he was there, both Gudahl and Graefe were members of the board of the defendant company. Elliot had been in charge of the company when he first began work for them and various of the members of the board of directors had been on trips with him when he had gone to the Dodge ranch and had seen Dodge using stored reservoir water on his ranch. Dodge had used the reservoir water every year that Whiteing was there and at no time did the directors protest such use. The witness also told about acquiring of certain rock on Dodge's premises and its use on the reservoir for riprap.

Charles Preuit, who had been manager of the Wheatland Irrigation District from 1956, said that Dodge had not requested him to deliver defendant's reservoir water; that he had not given permission for delivery; and that he had not known of Dodge's using any. Asked whether or not he had refused Dodge water at any time, he answered equivocally, "Since I have been manager we called for regulation each and every year."

■■ As we view the testimony, there was substantial evidence to support the court's finding and judgment that the oral agreement between the predecessors in interest of plaintiff and defendant is binding. It is true that the oral agreement as shown by the testimony was somewhat vague. Nevertheless, the court was fully justified in considering the conduct of the parties from that time to the date of the litigation. In determining whether an agreement exists, the conduct of the parties with reference to the alleged contract may be considered. Andrews v. Costilla Ditch Co., 114 Colo. 317, 165 P.2d 188, 190; and see Newburgh v. Florsheim Shoe Company, D.C.Mass., 200 F.Supp. 599, 602; 17A C. J.S. Contracts § 593, p. 1157; 4 Williston, Contracts, p. 815 (3 ed.); 1 Corbin on Contracts, p. 453 (1963). This principle was applied to matters relating to the use of water in the case of Sturgeon v. Brooks, 73 Wyo. 436, 281 P.2d 675, 684:

"Another factor must be considered in determining the over-all equities between the parties herein. We have set out in some detail the conduct of the parties as between themselves. There can scarcely be any doubt that commencing at least with about 1946 or 1947—or earlier, according to Sturgeon's testimony—Sturgeon acknowledged, recognized and acquiesced in the fact that Brooks owned the reservoir and the prior rights therein and that he had the privilege to repair it, and use the water thereafter. * * *"

In Anderson v. Wyoming Development Co., 60 Wyo. 417, 154 P.2d 318, 347, we said that aside from other considerations the contract there had been acquiesced in by all the parties concerned for decades.

■■ It is urged by defendant that plaintiff's predecessors in interest did not even own Sec. 34 in 1909 when the agreement concerning the water was allegedly made. Unfortunately, neither of the parties presented evidence to show the basis of the patents to the relevant portions of Sec. 34 which were issued in 1911 and 1912, respectively, to plaintiff's grandmother and grandfather. Plaintiff argues in the brief that Mrs. Dodge homesteaded her part of the property, but this is incorrect from the face of the patent. If her parcel was desert-entry land, as might well have been from the nature of the instrument, it would follow as a matter of which the court might take judicial notice that the requirements for occupancy and dominion would have been such as to give plaintiff's predecessors in interest rights in the property during 1909. In any event, the uncontroverted evidence of Thomas B. Dodge as to the residence of his father and mother, the damage caused by the spillway, and the subsequent conversation with the representative of the Wyoming Development Company, warranted the court in the determination which it obviously made that John Tyler Dodge and his wife in 1909 had equitable interests in Sec. 34 which ripened

into legal title later and that in the mentioned year they suffered damage to the section because of the Wyoming Development Company's spillway.

Defendant points to the fact that witness Thomas B. Dodge at one time referred to the "Wheatland Development Company" and notes that there never was such a company, but this is unimportant since the witness elsewhere made it clear that the original agreement was between his father and the Wyoming Development Company, represented by Carey.

Defendant also contends that the Wyoming Development Company had no interest in Wheatland Reservoir 2 and that this was owned by Wheatland Industrial Company until it was purchased by the Wheatland Irrigation District in 1947. This argument is unpersuasive since there is nothing in the record that substantiates the statement that the Wheatland Industrial Company owned Reservoir 2. In fact, defendant's second counterclaim would imply to the contrary, "the Defendant is the owner of Wyoming Development Company's #2 Reservoir."

Defendant insists that whatever reservoir water was given to Dodge was a payment for the rock which was taken from plaintiff's property and used in the riprapping. However, a scrutiny of the testimony does not bear this out. It shows rather that Dodge's attitude was that as long as he continued to get the water he was not interested in payment for the rock.

■ Defendant suggests that the judgment is violative of § 41–254, W.S.1957:

" * * * Every conveyance of a ditch, canal or reservoir, or any interest therein, shall hereafter be executed and acknowledged in the same manner as a conveyance of real estate and recorded as herein provided, and any such conveyance which shall not be made in conformity with the provisions of this act, shall be null and void as against subsequent purchasers there-

of in good faith and for a valuable consideration."

Nothing is advanced to show why such statute is applicable, and we think it is not because the statute relates to the ownership and conveyance of ditches, canals, and reservoirs, whereas the plaintiff claims only the right to use the water. It may be interesting to observe in that connection that § 41–28, W.S.1957, as it existed at the time of the alleged agreement stated as it does now that the use of water stored under the provisions of the chapter dealing with reservoirs might be acquired under such terms agreed upon by and between the parties in interest.

■■ Defendant contends that § 41–37, W.S.1957, provides that the reservoir water and rights acquired under reservoir permits and adjudications shall not attach to any particular land except by deed, or other sufficient instrument conveying such water or water rights, and argues that there never was any deed or any sufficient instrument conveying the water as contemplated by the statute and that there is no question that the defendant was a subsequent purchaser in good faith. The argument is without merit. In the first place, the mentioned section of the statute was not passed until 1921, long after the oral agreement. Moreover there was no direct proof that defendant was a bona fide purchaser for value without notice. Such a defense is affirmative and must be specifically pleaded and proven. United States v. Demmon, D.C.Mont., 72 F.Supp. 336, 338; and see 1A Barron & Holtzoff—Federal Practice and Procedure, p. 161 (1960). The testimony before the court, showing that certain of the directors of defendant corporation were also directors of its predecessors and that Whiteing was manager of the defendant immediately following its organization and of its predecessors in interest immediately prior thereto, tended to show that defendant was not a bona fide purchaser for value without notice.

A consideration of the entire record, with attention directed to all of the matters

which defendant has here urged, discloses that there was sufficient evidence to warrant the issuance of the judgment allowing plaintiff the use of the water in question.

We turn lastly to the requirement that defendant notify plaintiff ten days prior to the date it intends to commence diverting water in the spring and not less than five days before the water is to be turned off in the fall. There was considerable evidence to show that prior notice of the running of large amounts of water was requisite if Dodge was to give adequate protection to his livestock. There was a dearth of testimony as to the amount of notice which was necessary. We were impressed with the attitude of counsel at the time of argument when as we understand it plaintiff's counsel tacitly agreed that five days' notice both for the turning the water in and out was adequate. We see no reason why it would not be, and the judgment should be amended in that respect.

Affirmed.